STONESEIFER, Respondent, v. SHEBLE, Appellant.

1. Plaintiff went on board a steamboat on the Mississippi river at one of her intermediate landings, and while transacting business with the boat was taken off to a landing below, against his remonstrance. *Held*, that the plaintiff is entitled to damages amounting to the reasonable value of the time lost and expense incurred in being taken to and returning from the place at which he was landed; and that if the master of the boat could have caused him to be landed at any point easy of access between the place he was taken off and when he was finally landed, but maliciously or wantonly and wrongfully refused so to do, plaintiff is entitled to such further damages as would be reasonable punishment for such malicious conduct.

*Appeal from Ralls Circuit Court.*

The facts upon which this action is based will appear from the opinion of the court.

The court below, on its own motion, gave the jury these instructions; " 1. If the jury find the issue for the plaintiff

they should assess his damages at the reasonable value of the time lost by plaintiff and expenses incurred by reason of his removal to and return from Clarksville. 2. If the jury find the issue for the plaintiff, they should assess his damages at the reasonable value of the time lost and expenses incurred by plaintiff in being taken to and returning from the town of Clarksville; and if the jury further find from the evidence that defendant could have caused plaintiff to be landed at any point easy of access between Louisiana and Clarksville, and that defendant maliciously or wantonly and wrongfully refused so to do, but took plaintiff on to the town of Clarksville, they may assess such further damages as the jury may think under all the circumstances would be reasonable punishment for such malicious conduct."

The following instructions were asked by the defendant below, all of which were refused except the last: " 1. The defendant is liable only for his own acts or neglects in the premises and not for those of any other officer or officers of said steamer. There can be no liability on the defendant as captain of the said boat, except for any act or omission he may have committed or been guilty of after he was notified of plaintiff having been taken off on said boat. 2. If the jury believes from the evidence in the cause that the usual signals for the steamer ' Sam Gaty's' leaving the landing, according to the regulations established by the proprietors of said boat on the occasion in question were given and thereupon said boat left the landing and continued on her trip to Clarksville, taking off said plaintiff, then the defendant is in no default, and the verdict should be for the defendant. 3. If the jury believes from the evidence in the cause that the plaintiff went aboard of the steamboat ' Sam Gaty' on business, as stated in his petition, and that one of the regulations of that boat was that those coming on board of said boat to do business and then go off without going as passengers on said boat, should leave said boat on or before the signal of the second ringing of the bell being given by the proper officer of said boat; that said signal was so given and then the

said boat left the wharf with the said plaintiff aboard, the commander or officer of said boat was not bound to return to shore in order to land the plaintiff, and they should find a verdict for the defendaht.    4. If one of the regulations established for said boat's management by the proprietors or their agents, the officers of said boat, existing at the time in question, was, that two bells should be rung before said boat should leave the landing, and that it should leave so soon as said two bells should be rung, and not be bound to return to shore, or put off passengers (who being aboard failed to get off on or before the ringing of said two bells,) and if the jury believes further from the evidence in the cause that said two bells on the occasion in question were rung and plaintiff still failed to leave said boat and was taken off contrary to his wishes expressed, or remonstrance addressed to defendant, the jury should find a verdict for the defendant.    5. If it has been proved by the evidence in the cause that the plaintiff went aboard of the steamer ' Sam Gaty' as admitted in the pleadings, and one of the regulations of said boat was, that on landing there or at any place on the river the signal to leave said boat, to be given for those coming on board on business and not intending to go as passengers on the trip she was then making, was the ringing of the bell of said boat at two different times, and that said signal was given on the occasion in question and plaintiff had time thereafter to leave said boat, and plaintiff did not leave said boat as he might have done, and was taken off by said boat, the verdict should be for the defendant.    6. If the jury believes from the evidence in the cause that plaintiff had sufficient time to transact the business he had on board said steamboat ' Sam Gaty,' on the occasion in question and leave when the usual signal for persons to leave were given and he did not leave, and was taken off on said boat, they should find for the defendant.    7. Unless it appears from the evidence in the cause that the defendant was, on the occasion in question, owner or part owner of said steamboat, ' Sam Gaty,' they should find for the defendant.    8. The defendant in this suit is liable for

an injury done by himself, or by his directions, but is not liable for any act done by the clerk or any other officer of said boat unless directed by him; and though the jury may find that he was captain of the boat, this fact does not make him liable for any wrongful act of any officer of said boat without his direction."

*G. Porter*, for appellant.

I. The petition of the respondent does not, on its face, state facts sufficient to constitute a cause of action, and the court below should have arrested the judgment for the following reasons: 1. The petition states that respondent, on the day specified, went on board said boat "Sam Gaty," while lying at the wharf at Louisiana, &c., in discharge of duties connected with the business of said boat as a common carrier, and while on said boat, and before he could discharge his said duties, appellant wrongfully, &c., caused said boat to be backed out, &c., and does not state the nature of those "duties," or of respondent's business on board said boat, and *non constat* that the acts of appellant complained of prevented his discharging those duties or transacting that business, or otherwise damaged or injured respondent. 2. Said petition does not state or show that respondent went aboard said boat at Louisiana with the intention of transacting business thereon, and then going off said boat before she left Louisiana; nor does it state that he was residing or doing business in Louisiana, so as to justify an inference even that his business required him to get off said boat before she was moved off from said town, so as to show the court that he was or could be injured any more by being taken to Clarksville than by being left or landed at Louisiana. 3. The petition does not show how the taking of respondent to Clarksville and failing to find means to bring him back thence, or how the sickness of respondent's family (whose whereabouts at the time in question is not stated—whether it was at Louisiana or Clarksville or elsewhere,) or either of these things injured or affected respondent. The nature or char-

acter of respondent's ill-treatment by appellant on way the from Clarksville to Louisiana is not stated. (Sedg. Meas. Dam. 576.)

II. The court below erred in excluding the evidence of the usage of the trade (the custom of the river) sought to be be proved by the witness Buchanan, and the regulations of the trade in case a person on board of a boat at any landing and intending to get off, by inattention to the signals, fails to get off and is taken off on said boat; that such usage is admissible and such regulations are allowed and sanctioned by the law applicable to carriers and other bailees, appellant cites Story, Bail. § 1418, 538, 553, 611, 591; Angell on Carriers, 301, 525—30; Chitty, Contr. 483. If the evidence in question thus excluded, as to the rights and privileges of the steamboat commander, according to the custom, was not a defence or justification, it was certainly matter proper to be considered by the jury in estimating the damages, considering (as the instructions given them by the court below on its own motion, as to punitive damages for appellant's malice, invited them to do,) all the circumstances of appellant's conduct in the premises, as well as of respondent's.

III. The appellant insists that instruction No. 2, given by the court below on its own motion, was erroneous. 1. That measure of damages, vindictive or punitive, was not claimed by respondent, as indicated by the instruction he asked of the court. Appellant, neither in law nor ethics, is bound to pay respondent more than respondent is entitled to receive. (2 Greenl. Ev. 266, note 2.) 2. That it is error to give instructions which there is no evidence to warrant, (16 Mo. 502; 27 Mo. 26,) as calculated to mislead to jury. This second instruction given by the court was obnoxious to this objection. There is no evidence tending to show that respondent desired, much less that he requested, to be landed at either of the wood-yard landings between Louisiana and Clarksville. There is nothing in the evidence to show that it would have been any benefit or accommodation to respon-

dent to have been landed at either of the intermediate landings. 3. The damages were excessive—mainly the result of the giving of the instructions spoken of—in view of the facts proved and the other instructions given. For this cause the judgment should be reversed. There was no actual damage, or very little, done the respondent either in time, purse, or feelings. His damage, as estimated by himself, was not over twenty-five dollars. That excessive damage is, of itself, ground for reversal, see 23 Mo. 240.

IV. Instructions 3—6, asked by appellant, or an instruction giving the law as to the custom of trade, in that behalf, which custom there was some evidence tending to show, should have been given. As to the proper practice in this regard, the appellant cites 21 Mo. 431 ; 19 Mo. 306.

*J. B. Henderson,* for respondent.

I. The petition states sufficient to constitute a cause of action. (3 Kent, Com. 160, note *a,* 162–3 ; Abbott on Shipping, 213—218, side paging ; Keene v. Ligardee, 5 La. 431 ; Chamberlin v. Chandler, 3 Mason, 142 ; Angell on Carriers, 610 and following ; The Eleanor, 2 Wheat. 345.)

II. It is clear that the captain, the master of the vessel, is liable for damages resulting from conduct such as alleged in petition, (Abbott, Ship. 216, side paging, 211—217 and notes ; 3 Kent, Com. 160, note *a,*) and so the master " is personally bound by his contracts, and the person who deals with him, in matters relative to the usual employment of the ship, has a double remedy. He may sue the master or the owner." (3 Kent, Com. 161.)

III. The instructions given put the whole law of the case properly before the jury.

IV. The instructions asked by the defendant were properly refused. The first is included in the eighth, which was given. The second is erroneous because it makes the mere giving of signals, without regard to time, a full and complete defence. The third and fourth are wrong for the same reason, and for the additional reason that they direct a ver-

dict for defendant without reference to the fact that defendant caused plaintiff to be taken beyond several points at which he may have been safely landed, with a full knowledge of the facts. The fifth and sixth instructions are erroneous; they direct a verdict for defendant, without hypothecating all the facts necessary to such verdict, and whatever contained in them that is proper for the jury, appears in the instructions given. The seventh is clearly wrong for the reasons given above. The eighth is more favorable to defendant than it should be, for the master of a vessel is responsible for the acts of the other officers under his control. (2 Wheat. 345.)

NAPTON, Judge, delivered the opinion of the court.

The plaintiff went aboard the steamer Sam Gaty, of which defendant was master, to escort a lady who wished to take passage on the boat to St. Louis, and was taken off as far as Clarksville, against his remonstrances. This suit is brought to recover damages for the alleged wrong done by the defendant.

The question upon which the defendant's liability depends is chiefly one of fact, to-wit: whether a reasonable time was allowed the plaintiff to transact the business which took him on the boat before the boat was started from the landing. If there was not, then the additional inquiry arose, whether the conduct of the captain in refusing to put the plaintiff ashore, at his earnest and repeated solicitation, was wantonly wrong and unnecessarily offensive. The jury found these issues under instructions from the court for the plaintiff, and assessed his damages at three hundred dollars.

The points of law made in the case are, 1st, that the instructions given by the court are wrong; 2d, that those asked by the defendant should have been given; and, 3d, that the damages are excessive.

1. The first instruction given which leave the jury to say whether a reasonable time was given the plaintiff to transact

his business and leave the boat before she was pushed off from the landing is not objected to; but objections are taken to a portion of the last instruction given, which permits or directs the jury to give vindicatory damages, if they were satisfied that the defendant wantonly and maliciously refused to land the plaintiff at any point between Louisiana and Clarksville, easy of access. The objection to this instruction is, that, although there was proof of three landings between Louisiana and Clarksville, which were accessible at the stage of water in the river when this occurrence took place, there was no evidence that plaintiff asked or desired to be put off at either of them, and as they were only wood-yards, with only a farm house perhaps near by, there was reason to suppose the plaintiff would prefer going on to Clarksville.

The testimony of all the plaintiff's witnesses, who were present at the conversation between the plaintiff and defendant, is very explicit, that plaintiff insisted on being "landed" or being "put on shore;" that he specified no particular place, but desired to be put ashore, and stated his reason; that he said to the captain that his family was sick, and offered to pay five dollars to be put ashore, and declared he would rather pay twenty than go on to Clarksville. The reply of the captain to these solicitations was that he would land him at Clarksville, and that he would not land him until the boat reached Clarksville. This conversation, it would seem, rendered any specification of particular landing points, by the plaintiff, superfluous. A refusal to land the plaintiff at all, until the boat reached Clarksville, was equivalent to a refusal to land at the intermediate points. Besides, it did not appear that the plaintiff knew of these landings, although it might well be inferred that the officers of the boat did. So that we see no objection to referring this matter to the jury, as the court did, and it is quite obvious that the verdict was based, not so much on the refusal of the captain to land the plaintiff at any particular point, as upon the manner of the refusal, of which the jury were the proper judges.

2. The instructions asked by the defendant were all based upon the idea, that his exemption from liability was established by proof of the usual signals having been given on the boat before she was started from the landing.   There is no doubt that persons going on board a packet boat and carelessly or intentionally remaining on board after the usual signals for starting are given, must abide by the consequences of such conduct ; but this case did not turn upon this fact. There was no dispute but that the usual bells were rung and that the plaintiff remained on board until after the signals had been given and the boat was pushed off.   But the question of the fact was, whether sufficient time was allowed in this case for the plaintiff to transact his business before these signals were given, or rather before the boat started.   There was proof to show that, although the clerk assured him there would be time to pay the passage money of the lady under his charge, the plaintiff had not finished his business at the office and passed on to the ladies' cabin to hand the lady, who accompanied him on the boat, her change, before the boat was under way.   The instructions of the defendant were calculated to mislead the jury.

3. The damages given by the jury are large, larger perhaps than the circumstances in our judgment would warrant ; but we have no power to supersede the estimate of the jury and substitute ours.   There is nothing in the evidence or the result which would authorize an inference that the jury were actuated by any improper prejudice or passion.   The conduct of the defendant, as it appeared in evidence, was not such as to unite the sympathy of the jury.   There was proof of a good deal of cool indifference to the remonstrance of the plaintiff, on the part of the defendant, not calculated to conciliate.   He was apprised by the clerk of the circumstances under which the plaintiff had been detained, and the fact that the lady's baggage was left ashore seems to confirm the uniform testimony of all the plaintiff's witnesses that the boat made a very hurried landing, and that no time was

in truth afforded the plaintiff, notwithstanding the assurances of the clerk to the contrary, for him to leave the boat. Under these circumstances, the incivility of the captain, described by all the witnesses who were present, was unjustifiable; and although the inconvenience to which plaintiff was subjected was slight, and did not in our judgment merit so large a penalty, yet we cannot say the verdict was beyond the province of the jury, or such a one as this court would be authorized, on the ground of excess alone, to set aside.

Judgment affirmed.