The Cincinnati, Hamilton and Indianapolis Railroad Company v. Eaton.

Filed March 14, 1884.

---

No. 10,835.

THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY v. EATON.

RAILROADS.—*Evidence.*--*Damages.*—*Tort.*—In an action sounding in tort, by a passenger against a railroad company, for carrying her beyond her place of destination, there being evidence of failure to stop the train at the place, that she was landed where no conveyance could be procured, and that she then walked, in the night, a distance of five miles, she was

not allowed to prove further that the walk occupied three hours over dusty roads, that in crossing a creek she got her clothing and feet wet, that she was chased by dogs, and otherwise frightened, and that the weather was hot and sultry, in consequence of which she became and remained sick for some time.

*Held,* that the evidence was admissible.

SAME.—For a discussion as to what may be considered in assessing damages in such cases, see opinion.

From the Superior Court of Marion County.

*A. C. Harris, W. H. Calkins* and *R. B. Marshall,* for appellant.

*I. M. Krutz, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellee.

NIBLACK, J.—On the afternoon of the 12th day of July, 1881, Mrs. Mary M. Eaton purchased of the proper agent at the Union Depot, at Indianapolis, a ticket entitling her to transportation over the railroad belonging to and operated by the Cincinnati, Hamilton and Indianapolis Railroad Company, from that depot to Morehouse, a flag station a few miles east of Indianapolis, and soon thereafter, that is to say, on the same afternoon, entered a train of that company's cars which stopped regularly at Morehouse when signaled to do so. Her place of ultimate destination was the house of a brother-in-law, named Graham, who lived three miles south of Morehouse, and she expected Graham to meet her at Morehouse upon her arrival at the place. After leaving Indianapolis the conductor took up her ticket, but, for some unexplained reason, failed to signal the engineer to stop at Morehouse, and in consequence the train did not stop at that station.

When Mrs. Eaton discovered that the train was passing Morehouse without stopping, she appealed to a gentleman sitting near her for assistance, and requested him, if possible, to have the train stopped at the approaching crossing of a dirt road, saying that she would be willing to get off at that place. That gentleman went forward and soon returned with

a brakeman running on the train, who informed Mrs. Eaton that the train could not be stopped between stations as she had requested, but that they, meaning those in charge of the train, would take her on, free of charge, to Rushville, where they would meet another train, upon which they could send her back to Morehouse, thus enabling her to reach that place on her return at or near eleven o'clock that night. She declined to be set down at Morehouse at that time of night, and hence rejected the offer to be sent further on and returned in that way. As the train was approaching the next station, which was a small and unimportant station, five miles east of Morehouse, called Julietta, the conductor came to Mrs. Eaton and, taking her satchel, told her that she would have to get off there, where she would find a buggy ready to take her back to Morehouse. When the train stopped at Julietta, she followed the conductor out onto the platform, where he left her in charge of the station agent. After the train had left, she ascertained, upon inquiry, that no conveyance had been provided for sending her back to Morehouse, and that no conveyance could be procured for that or any similar purpose, at or near Julietta Station. Wishing, in any event, to proceed directly to the house of Graham, her brother-in-law, which was five miles distant across the country from Julietta, and not to return immediately to Morehouse, she left the station at which she had been so left on foot and walked the entire distance to Graham's house, leaving the former place perhaps before seven o'clock in the evening, and arriving at the latter place at nine o'clock at night.

This action was prosecuted by Mrs. Eaton against the railroad company to recover damages for being carried beyond Morehouse, and being compelled to walk so great a distance to reach Graham's house. After evidence had been introduced at the trial at special term, establishing, or tending to establish, the facts herein above stated, the plaintiff offered to prove: *First.* That the weather was hot and sultry during the afternoon and evening of the 12th day of July, 1881.

The Cincinnati, Hamilton and Indianapolis Railroad Company *v.* Eaton.

*Secondly.* That it took her nearly, or quite, three hours to walk from Julietta to Graham's house. *Thirdly.* That the road she had to walk over was very dusty. *Fourthly.* That in walking from Julietta to Graham's house she had to cross a creek at one place and a bayou at another place. *Fifthly.* That in crossing the creek, by the only practical method which the situation afforded, she got her clothing and feet wet, and that in crossing the bayou she had to carry rails and make a temporary walk way, suffering there, also, further injuries from mud and water. *Sixthly.* That a part of the road passed through a dark strip of woods. *Seventhly.* That she was sick when she arrived at Graham's house, and so continued for several days immediately thereafter. *Eighthly.* That her sickness resulted from the labor of walking, supplemented by worry of mind, fright, and the hot weather. *Ninthly.* That in passing a house on the road to Graham's house she was attacked and chased by two dogs, and in that way badly frightened. But the court refused to permit the plaintiff to make proof of the facts thus severally proposed to be proven, and the various rulings upon the exclusion of these facts were afterwards assigned as a cause for a new trial.

The trial at special term resulted in a verdict and judgment for the defendant. Upon an appeal to the general term the judgment at special term was reversed, the court holding that the judge at special term had ruled correctly in excluding the offered evidence as to the plaintiff's injuries from crossing the creek and bayou, as to her being attacked and chased by dogs, and as to her sickness claimed to have resulted from the incidents of her journey from Julietta to the house of her brother-in-law, but had erred in the exclusion of all the other items of rejected evidence, and it is from that judgment of reversal that this appeal is prosecuted.

The question as to what may be taken into consideration in the assessment of damages in a case like this is one which has provoked much discussion, and concerning which the text-writers have been unable to formulate any general rule of

easy application in all cases of the class to which this belongs. As bearing on the general subject there are many conflicting decisions, and in some cases sharp differences have been man-- ifested between judges of the same court as to the conclusions which have been reached by a majority of their number.

A narrower limit is applied in the assessment of damages for a breach of contract, pure and simple, than is prescribed in an action for a tort, and, in our judgment, much of the conflict between decided cases and the individual views of judges, to which we have referred, has resulted from a fail- ure to carefully observe that distinction between the two classes of damages. Two of the cases cited by counsel will serve to illustrate our meaning in this respect. One is the case of *Hobbs* v. *London, etc., R. W. Co.*, 11 Moak Eng. R.181, and the other is *Pullman Palace Car Co.* v. *Barker*, 4 Col. 344 (34 Am. R. 89). These cases were both treated as, and de- cided upon the theory that they were, actions for a breach of contract merely, when in truth they were both actions for a neg- lect of duty by a common carrier from which an injury resulted to a passenger, and hence were, in all their essential features, actions for tortious misconduct on the part of the defendants.

Counsel for the appellant contend for the application of the doctrine of these and other kindred cases to the case at bar, upon the like theory that it is only an action for the breach of a contract for transportation, entered into between the parties, and, consequently, an action in which the nar- rower limit ought to be applied in the assessment of the dam- ages. It is true that the appellee entered the appellant's train of cars at Indianapolis, under an implied contract for her transportation to Morehouse, but when the appellant car- ried the appellee beyond Morehouse, against her will, it ceased to carry her as a passenger for hire, and became a wrong-doer, responsible for whatever injury or inconveni- ence, if any, which might result to her from being thus car- ried beyond her place of destination.

Thompson on Carriers of Passengers, p. 568, says: " The

refusal of the carrier to receive a passenger, carrying him beyond his destination, detaining him unnecessarily during his journey, or carrying off a person against his will who is legitimately upon a vessel, are all wrongs which may be redressed by actions for damages thereby sustained." And this statement of general legal propositions is well supported in reason, as well as by the authorities cited by the author. Therefore, the essential facts relied upon for a recovery in this action constituted a tort, concerning which a wider range of inquiry was permissible than in an ordinary action for the simple breach of a contract. *Heirn* v. *McCaughan*, 32 Miss. 17; *The Canadian*, 1 Brown Adm. R. 11; *Stoneseifer* v. *Sheble*, 31 Mo. 243; *Thompson* v. *New Orleans, etc., R. R. Co.*, 50 Miss. 315 (9 Am. R. 443); *Burnham* v. *Grand Trunk R. W. Co.*, 63 Me. 298 (18 Am. R. 220).

Thompson on Negligence lays down the following general rule on the subject of consequential damages: "Whoever does a wrongful act is answerable, for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrong-doer." 2 Thomp. Neg. 1084; Add. Torts, 5; *Baltimore, etc., R. R. Co.* v. *Reaney*, 42 Md. 117.

In the case of *Jones* v. *Boyce*, 1 Stark. 402, Lord ELLENBOROUGH said: "If I place a man in such a situation that he must adopt a perilous alternative, I am responsible for the consequences."

The case of *Brown* v. *Chicago, etc., R. W. Co.*, 54 Wis. 342 (41 Am. R. 41), the facts, briefly stated, were that Brown and wife, and a seven year old child, took passage on the railway to a place called Manston; that before reaching Manston, and at a place three miles east of that place, Brown and wife were told by a brakeman that they were then at Manston, and to leave the train, which they accordingly did; that it was then night; that it had rained the day before, and

was still cloudy; that, ascertaining that they were not at Manston, and seeing no house at which they could take shelter, Brown, with his wife and child, walked on in the direction of Manston, arriving there late at night; that Mrs. Brown was, at the time, *enciente,* and was very much exhausted by the walk; that she soon afterward became dangerously sick, and had a miscarriage, all resulting from the exertion she had made in walking.   After an elaborate review of numerous authorities having a bearing on the question involved, including the cases of *Hobbs* v. *London, etc., R. W. Co., supra,* and *Pullman Palace Car Co.* v. *Barker, supra,* which were disapproved, the court held that the railway company was liable to Mrs. Brown for the injuries she received from her enforced walk to Manston.

That case was, perhaps, a stronger one against the railway company, in some respects, than the one at bar, but the general principles announced, as decisive of that case, have a practical application to the facts of this case, and are entitled, as we believe, to the favorable consideration of this court.

The court in that case, after referring to what had been announced as a correct legal proposition in another case, continued:  "So, in the case at bar, the defendant, by its negligence, placed the plaintiffs in a position where it was necessary for them to act to avoid the consequences of the wrongful act of the defendant, and, acting with ordinary prudence and care to get themselves out of the difficulty in which they had been placed, they sustained injury.  Such injury can be, and is, traced directly to the defendant's negligence as its cause; and it is its proximate cause, within the rules of law upon that subject."

It is due, however, to the importance of the subject to state that the opinion in that case was promulgated by a majority vote only, two of the judges dissenting, and for that reason we would not quote from it with approbation if we were not fully satisfied that the conclusion reached was substantially a correct conclusion upon the facts as we find them reported. The case is, at all events, one of interest because of its grouping

together of, and its comments upon, a great number of cases having relation to the general subject of the liability of common carriers of passengers.

When the appellant set the appellee down at Julietta, it did so at the peril of having to respond in damages for whatever injury, if any, she had already sustained, or might thereafter sustain, by being carried out of her way on the journey she started out to make, and placed her in a position in which she was required to do whatever was necessary to extricate herself from the consequences of the wrong which had been inflicted upon her.

If, therefore, without being able to procure a conveyance, and acting with prudence and care, the appellee proceeded on foot to complete her journey, and thereby, and as incidental thereto, received injuries, and incurred vexatious annoyances, she became entitled to have those injuries and annoyances taken into consideration in estimating her damages in the event of a verdict in her favor.

Some of the facts which the appellee proposed, but was not permitted to prove, might not have been of much value as evidence, but, as incidents connected with the appellee's journey, they were all facts which, we think, ought to have been admitted in evidence for the consideration of the jury. If the dogs which attacked and chased the appellee had bitten or otherwise physically injured her while on her way, that would doubtless have constituted a distinct and disconnected injury, for which the appellant would not have been responsible, but the fright and peril, which she proposed to prove were occasioned by the dogs, amounted only to annoyances incidental to the walk which, it is assumed, the appellee was constrained to make, and hence stand upon different grounds.

The conclusion we have reached in this case is supported, either directly or indirectly, by the following cases: *Billman* v. *Indianapolis, etc., R. R. Co.*, 76 Ind. 166 (40 Am. R. 230); *Binford* v. *Johnston*, 82 Ind. 426 (42 Am. R. 508); *Williams* v. *Vanderbilt*, 28 N. Y. 217; *Eten* v. *Luyster*, 60 N. Y. 252;

*Allison* v. *Chandler*, 11 Mich. 542; *Hill* v. *Winsor*, 118 Mass. 251; *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381 (45 Am. R. 464).

The judgment of the court below at general term is affirmed, with costs.

Filed April 15, 1884.