# Louisville & Northern Railway & Lighting Company v. Comley.

(Decided March 7, 1916.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Carriers—Failure to Carry Passenger to Destination—Damages Recoverable.—Where a passenger, who had a ticket to a terminal station in a large city, was put off at the outskirts of the city, some three miles from the station, in the middle of a cold, winter night, with the rain and snow falling, and left to find her way as best she could to her destination, the measure of her recovery was such damages as would compensate her for lost time, expense incurred by the delay, and for any discomfort, inconvenience or sickness resulting directly from the failure to carry her to the station.

2. Carriers—Failure to Carry Passengers to Destination—Damages Recoverable.—The damages recoverable by a passenger who is compelled by the carrier to leave the car in which he is riding under circumstances manifesting indifference for the safety and comfort of the passenger, are to be measured by the recovery allowed in cases of tort.

3. Carriers—Measure of Damages Recoverable by Passenger When There is Delay or Interruption in Transit.—Where there is merely a delay or interruption in the course of carriage and in consequence the passenger is put off in a safe place where he can have comfortable accommodations until the journey can be resumed, and there is no element of indignity, violence or wrongdoing entering into or connected with the conduct of the carrier, the damages are limited to compensation for lost time and expense incurred by the delay.

4. Carriers—Damages Recoverable by Passenger When Contract of Carriage is Broken in Such a Manner As To Constitute a Tort.— But when the contract of carriage is broken in such a manner as to be tortious, as when no effort is made by the carrier to look after the safety or comfort of the passengers, and the situation is such that the passenger cannot find safe and comfortable accommodations by the exercise of reasonable care, the carrier must compensate him not only for lost time and expense incurred, but for such inconvenience, discomfort or illness as follows directly from its acts.

5. Damages—Duty of Passenger to Minimize.—It is the duty of a passenger who has been put off by the carrier at a place other than his destination to exercise ordinary care to minimize his damages.

GORDON & LAURENT for appellant.

ROBERT L. PAGE and L. D. GREENE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant company operates a traction railroad from Louisville, Ky., to Indianapolis, Ind., its terminal station in Indianapolis being located in the center of the city. On November 1, 1913, the appellee purchased tickets for herself and daughter for transportation over the road of appellant from Louisville to its terminal station in Indianapolis, to which she desired to go, and became a passenger on the car which left Louisville at 6:30 p. m.

It appears that on this date there was a street car "strike" on in Indianapolis among the employes of other street railway lines operating in the city; but the strike did not extend to the employes of the appellant company. It further appears that when the car on which appellee was a passenger reached the city limits of Indianapolis about midnight, the passengers on the car, including appellee and her daughter, were required to get off, as the company, on account of the strike, did not think it prudent to run its cars into its terminal station.

In this suit brought by her to recover damages for the failure of the company to transport her to the place of destination in compliance with its contract, there was a judgment in her favor for $257.90, and the company brings the case to this court, asking that an appeal be granted and the judgment reversed.

There is no contradiction in the evidence that there was a street car strike on in Indianapolis at the time appellee purchased her ticket in Louisville and at the time the car on which she was a passenger reached the city limits of Indianapolis. Nor is there any contradiction that although the employes of this company were not involved in this strike, it would not have been safe or prudent to have taken its cars into its terminal station. It is also undisputed that the ticket agent of the company at Louisville had been notified by the company some three hours before appellee purchased her ticket and took passage on the car, that the cars would not run into the terminal station at Indianapolis or any further than the city limits. This Louisville agent also testifies that he received this notice about three o'clock in the afternoon of the day on which appellee purchased her ticket and notified all persons buying tickets

thereafter for Indianapolis that the cars would not run beyond the city limits.

The appellee, however, denies that the agent gave her any information of this nature, and on the contrary says that she had heard of this strike and being apprehensive that it might interfere with the running of the company's cars to the terminal station at Indianapolis, inquired of the agent at the station in Louisville before purchasing her ticket if the strike would affect the running of the cars into the terminal station and was assured that it would not.

She further testifies that when the car reached the city limits, the conductor said: "You must all get off." My daughter said: "Has the company furnished any conveyance for passengers?" He said, "No, they have not." I said, "Look here, you don't tell me you are going to put off two lone women in this way here at midnight with no protection?" He said, "I have no time to talk; get out of the way," and we all got out there. When we got out the ground was muddy; it was snowing, and it was very bad weather. I had on low shoes and I was not dressed for that occasion at all. I don't know how far we walked, but quite a distance. My daughter went to a man in an automobile; she halloed at the man, and I told him our trouble and where we wanted to go, and he took us in.

"Q. Was there a paved street there? A. No, sir; there was no paved street where he put us off. Q. Were there any electric lights? A. No, sir; there was no electric lights where we was put off. Q. Did you see any houses around there? A. I did not. As for the conductor instructing us, we went to him, but he gave us no information. We were two lone women out there in the night.

"Q. Did the conductor notify you that there was a drug store there or a place where you could reach a telephone? A. No, sir; he did not. Q. Was there any drug store? A. No, sir; there was none that I could see. There was not any in sight that I could see—nothing like a house. I made inquiry as to a hotel or boarding house that we could get shelter. The party I was talking to said that two miles was the nearest hotel or boarding house. Q. How far did you walk before you met this man with the automobile? A. I could not say how far, but a long distance. Q. About how long? A. I

would say half a mile, a mile or a mile and a half; something like that. Q. During the time that you walked that mile or a mile and a half, did you see any streets or houses? A. I did not. Q. Did you see any electric lights? A. I did not. Q. Did you see any lights of any character? A. I did not. Q. How far did that man have to carry you in the automobile before you reached the city? A. Well, not very far. We were almost into the city then. There was a pavement there where the automobile was. Q. Did you have to pay anything for this conveyance to take you into the city? A. I paid the man that took me in $5.00, and would have paid more if I had had to pay it. I could not stay there all night. Q. In what manner did the conductor treat you before he put you off? A. He told me he didn't want to be bothered with us; for us to get off. He said, 'I have got no time to talk with you; get off!' Q. What time did you arrive at your destination? A. Nineteen minutes after one o'clock.

"Q. Did you suffer any ill effects physically by reason of this exposure on that night near Indianapolis? A. Yes, sir. I got home Sunday morning and my throat was sore. I was not looking for serious results. I felt bad. My breast hurt. I dragged around all that day. I didn't go to bed on Monday; I worked. On Tuesday I laid down; was up and down; and on Wednesday the doctor called. Q. Did you have to go to bed? A. Yes, sir; I went to bed and was unable to sit up for four weeks. Q. What were you suffering from? A. Bronchial trouble, nervous prostration and tonsilitis."

She further testified that although she had purchased in Louisville a return ticket from Indianapolis, she was obliged to come back on a railroad train on account of the failure of the appellant. company to run its cars when she wished to return, and that she paid for this railroad ticket $2.90.

The evidence for the appellant showed that the car on which appellee was a passenger reached the city limits of Indianapolis about eleven o'clock, and that it was a bright, cold night, neither snowing, sleeting nor raining. That the conductor did not during the trip tell appellee that she need not get off at Greenwood, as the car would run into the terminal station, but, on the contrary, told her, before reaching Greenwood, that he had been notified that the car would not get farther than

the city limits and notified all passengers of this fact. It further appears from its evidence that there were about twenty-five passengers on the car who got off at the city limits, and that no complaint was made by any of them. And it was furthermore shown that there was a good paved street where the car stopped at the city limits, and electric lights and houses all about, as well as an open drug store and a grocery within a short distance from the place where the car stopped.

On this evidence the court instructed the jury that they should in any event find for appellee $2.90, the sum she paid for the return ticket to Louisville on the railroad train; and further instructed them that if they believed from the evidence that at the time she purchased her ticket in Louisville, or before the car reached Greenwood, she was notified that it would not go beyond the city limits, they should find for the company. The court also instructed the jury as follows:

"If you find for the plaintiff, you should award her such sum in damages as you believe from the evidence will fairly and reasonably compensate her for time lost, for any expense to which she was put in order to complete her journey to the city of Indianapolis, not exceeding five dollars on that account, for any discomfort, inconvenience, or sickness, resulting directly from the failure of the car to go to the terminal station, the whole award not to exceed the sum of three thousand dollars, the amount claimed in the petition."

Other instructions were properly given advising the jury that it was the duty of appellee when she was put off the car to exercise such reasonable care as a person of ordinary prudence so situated would exercise to find a convenient place where she might have safe and comfortable accommodation. And if she failed to do this, and her discomfort or inconvenience was aggravated thereby and her illness produced thereby, the jury should not allow her anything for discomfort, inconvenience or illness.

The principal ground urged for reversal is that the measure of damages to which appellee was entitled was compensation for loss of time and actual expense incurred by her in completing the journey to the terminal station, and in returning from Indianapolis to Louisville; and therefore it was error to instruct the jury that they might award her damages for any discomfort,

inconvenience or sickness resulting directly from the failure of the company to transport her to the terminal station.

As the company, with notice of the strike and that appellee would be put off at the city limits, sold her the ticket without notice to her, as we assume, that she would not be carried to the terminal station, we may put aside as of no moment in the consideration of the case the fact that a strike was in effect. And, in view of the fact that the company does not claim that it made any effort to carry appellee from the city limits to the terminal station or to take her or show her to a place where she could find nearby accommodation after she was obliged to leave the car, we may accept as true, as the jury did, on this question of fact her evidence as to what happened at the city limits and afterwards.

Thus looking at the case, we find that although appellee had a ticket for passage to the terminal station in the heart of the city, she was put off in the middle of a cold, winter night, with rain and snow falling, at the outskirts of the city, and left to find her way as best she could to her destination, some three miles away.

Under these facts counsel for the company argue that the case of L. & N. R. R. Co. v. Spurling, 160 Ky., 819, is conclusive of the position that appellee was only entitled to compensation for lost time and expense incurred. But we do not think this case is controlling.

In the Spurling case a Mrs. Spurling was assured by the agent of the railroad at Richmond, Ky., at the time she bought her ticket from that point to Parma, Mo., that flood conditions would not interrupt a continuous journey to the place of her destination. It turned out, however, that when she reached on her journey the city of Paducah the train between that point and Parma, Mo., had stopped running on account of high water, and Mrs. Spurling, after waiting in the depot at Paducah for several hours, concluded that she could not complete her journey and returned to Richmond. Afterwards she brought suit to recover damages for inconvenience and discomfort suffered and illness contracted as a result of the delay in the transportation, and for the amount expended in purchasing tickets. There was a judgment in her favor for $1,052.00, and in holding that she was only entitled to recover damages for loss of time and necessary expenses

incurred, including the price of transportation, the court said:

"Mrs. Spurling was not subjected to any delay or inconvenience until she reached Paducah. At this place she had presented to her three alternatives: She could have waited until the road was open; she could have returned to Princeton or Louisville and proceeded to her destination over another route; or she could have returned to her home, and she chose to do the last, influenced doubtless to take this course by her inexperience and lack of funds.

"But the same principles would, under the facts of this case, limit and control her right of recovery, which ever one of these three courses she pursued.

"The case presented and made out by Mrs. Spurling was founded in contract, not tort. It rested entirely on the breach of contract committed in failing to transport her to her destination without interruption or delay.

"The cause of action under the facts being in contract, the rights of the parties are to be determined by the rules regulating ordinary contracts. When Mrs. Spurling purchased the ticket, the agent making the assurance that travel was open could not have anticipated what course Mrs. Spurling would pursue in the event of interruption or delay in the carriage. He was not asked to, nor did he, make any suggestions as to what she should do in the event her journey was interrupted by high water or other cause, and he could not of course have foreseen what did actually happen. No facts were brought to his notice that would impose upon him any greater duty than he would owe to any other adult person who purchased tickets and to whom he might give assurances similar to those made to Mrs. Spurling.

"The fact that Mrs. Spurling was inexperienced and not well supplied with funds, is not entitled to any weight whatever in considering the liability of the company or the measure of damage to which she is entitled. She occupies exactly the same position as an experienced, well-to-do traveler would occupy under similar circumstances. The agent did not know of her inexperience or lack of funds or her inability on this account to take passage over some other route, or to remain in Paducah until the road was open. She was making the trip as an ordinary passenger in the ordinary way.

The company could not have anticipated that this delay in transportation would produce nervousness or sickness, nor was there anything connected with the initial transaction that should have put the company on notice that delay or interruption in the travel would produce these results. And there is no claim that any special damages were sustained by reason of the delay except those that resulted, as she claimed, in producing nervousness and illness.

"For the breach of contract she is only entitled to such damage as was reasonably in the contemplation of the parties at the time the contract was made, and this, under the facts stated, should be limited to compensation for loss of time occasioned by the delay, money expended in purchasing tickets, and the necessary expense she incurred in returning to her home." A like conclusion was reached, under substantially similar facts, in C., N. O. & T. P. Ry. Co. v. Raine, 130 Ky., 454; I. C. R. R. Co. v. Head, 119 Ky., 809; C., N. O. & T. P. Ry. Co. v. Rose, 115 S. W., 830; Cain v. L. & N. R. R. Co., 27 Ky. L. R., 201.

Taking the Spurling case as an example of the principle announced in these cases, the essential difference between the Spurling case and the case we have is that in the Spurling case there was no element of tort; the passenger was put off in a depot, in a large city, where she could be and was safe, comfortable and well taken care of. And where, as said, she had the alternatives presented to her of waiting until the road was open, or returning to Princeton or Louisville and proceeding on her journey to her destination over another route, or returning to her home; while the appellee was put off at the outskirts of a large city, in the middle of a bad night, at a point where there was no depot or other accommodations for her safety, protection or comfort, and she had no alternative except to make her way as best she could to the central part of the city, some three miles distant.

If, when the car reached the outskirts of the city, the company had furnished appellee with transportation to the terminal station, or had found her a safe, comfortable place, convenient to the point where she was put off, at which she could have stayed during the night, or there was such a place nearby at which she could have found such accommodation by using reasonable efforts, then

we would have a case like the Spurling case and like the Raine case.

The argument, however, is made that as the action has its origin in contract and not tort, the damages recoverable are to be measured by the rules applicable in cases of contract. It is true the action of appellee had its origin in contract and grows primarily out of a breach of the company's contract to transport her without unreasonable delay or interruption to the place of destination. But her action grows out of a breach of contract that has in it the elements of a tort and is not to be controlled by the principles that apply when a mere contract right is broken. And so in determining the damages properly recoverable a wider range of inquiry is permissible than in an ordinary action for the simple breach of a contract: Cincinnati, etc. R. R. Co. v. Eaton, 94 Ind., 474, 48 Am. Rep., 179.

The damages recoverable by a passenger, who is compelled by the carrier to leave the car in which he is riding at the time and under the circumstances described by appellee, are not to be measured by the same standards that would be applied if she had been put off at a comfortable station or at a nearby hotel and nothing out of the ordinary happened except the interruption of her journey or delay in reaching her destination. The conduct of the carrier amounted to more than a mere breach of its contract of carriage. Under the circumstances shown, it committed a wrong growing out of its contract relation, and its liability therefor is that of a wrongdoer; and, as said in Kentucky Heating Company v. Hood, 133 Ky., 383:

"A person who commits a tort like this is liable for all the damages that naturally flow from, and are the result of, this wrongful act, although he may not at the time have given any thought to or have anticipated that injurious consequences would follow. It is no excuse or defense for the wrongdoer that he did not mean to commit any wrong, or did not know that any injury or loss would ensue. The general rule in respect to the recovery of consequential damages in cases of tort is very well stated in Sutherland on Damages (Vol. 1, Sec. 16): 'In an action for a tort, if no improper motive is attributed to the defendant, the injured party is entitled to recover such damages as will compensate him for the injury received so far as it might reasonably have been ex-

pected to follow from the circumstances; such as, according to common experience and the usual course of events, might have been reasonably anticipated. The damages are not limited or affected so far as they are compensatory, or by what was in fact in contemplation by the party in fault. He who is responsible for a negligent act must answer 'for all the injurious results which follow therefrom, by ordinary natural sequence.' * * * Whether the injurious consequence may have been 'reasonably expected' to have followed from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom * * *. There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or non-action. All persons are imperatively required to foresee what will be the natural consequences of their acts and omissions, according to the usual course of nature and the general experience.' ''

Applying now this principle to the facts of this case, the carrier should be held liable in damages to appellee for all the consequences that reasonably followed as a direct result of its conduct, although at the time the contract of carriage was made it might not have been in the contemplation of either of the parties that what followed would happen or that inconvenience or discomfort or sickness would result on account of its breach of contract.

The Spurling, the Raine, the Head and the Rose cases presented under the facts a mere breach in the contract for carriage and are, we think, correctly written, but the principles of law laid down in those cases should be limited to a state of facts substantially similar to the facts stated in those cases and should not be extended to a state of facts such as appear in this case, or such as might appear in other cases presenting facts like those in this case.

When there has been merely a delay or interruption in the course of the carriage contracted for, and in consequence the passenger is put off at a safe place where he can have comfortable accommodations until the journey can be resumed, and there is no element of insult,

indignity, violence or wrongdoing entering into or connected with the conduct of the carrier, the damage should be limited, under the contract rule, to compensation for lost time and expense incurred by the delay. But when the contract of carriage is broken in such manner as to be tortious, as when no effort is made by the carrier to look after the safety or comfort of the passenger, and the situation is such that the passenger cannot find safe and comfortable accommodations by the exercise of reasonable care, and suffers injury in consequence thereof, the damage should be assessed under the tort rule, and the carrier must compensate him not only for lost time and expense incurred, but for such inconvenience, discomfort, injury or illness as follows directly from its acts.

There might also arise conditions in which the carrier would be liable for exemplary damages, as where its treatment of the passenger was accompanied by insult, indignity or violence, but these features do not enter into this case.

It is, however, the duty of the passenger, when delay or interruption in the course of the carriage contracted for occurs, or when he is required by the carrier to leave his car before the journey is completed, or when he is carried beyond his place of destination, to exercise such reasonable care as a person of ordinary prudence so situated would exercise to minimize the damages. And a passenger cannot recover for any suffering or loss due to his own want of ordinary care in this respect.

Authorities supporting the rules we have laid down are: L. & N. R. R. Co. v. Guy, 18 Ky. L. R., 750; Tennessee Central R. R. Co. v. Brasher, 29 Ky. L. R., 1277; L. & N. R. R. Co. v. Gaddie, 31 Ky. L. R., 502; Illinois Central R. R. Co. v. Jackson, 117 Ky., 900; Lexington & Eastern Ry. Co. v. Lyons, 104 Ky., 23; Kentucky & Indiana Bridge Co. v. Buckler, 125 Ky., 24; C., N. O. & T. P. Ry. Co. v. Carson, 145 Ky., 81; Southern Ry. in Kentucky v. Miller, 129 Ky., 98; Georgia Ry. Co. v. McAllister, 126 Ga., 477, 7 L. R. A. (N. S.), 1177; Brown v. Chicago, etc., R. R. Co., 54 Wis., 342, 41 Am. Rep., 41; Pittsburgh, Cincinnati & Chicago, St. Louis R. R. Co. v. Reynolds, 55 Ohio State, 370, 60 Am. St. Rep., 706; Purcell v. Richmond & Danville Ry. Co., 108 N. C., 414, 12 L. R. A., 113; Hutchinson on Carriers, 3rd Ed., Sec.

1492; Cincinnati, etc., R. R. Co. v. Eaton, 94 Ind., 474, 48 A. R., 179; 5 Ruling Case Law, Sec. 738.

The amount involved in this case is not sufficient to authorize an appeal as a matter of right, but as the question presented may be of interest in the administration of the law, we grant an appeal and deliver this opinion, affirming the judgment.