CASE 59.—ACTION BY MINNIE RAINE AGAINST THE CINCINNATI, NEW ORLEANS & TEXAS, PACIFIC RAILWAY COMPANY AND OTHERS FOR DAMAGES IN BEING DEPRIVED OF A BERTH IN A SLEEPER.—Nov, 18.

## Cin. N. O. & T. P. Ry. Co., &c., v. Raine

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff. Defendants appeal.—Reversed.

1. Carriers—Transportation or Passengers—Destination of Carriage—Carrier's Duty—Performance.—When a carrier's serv-

Cin., N. O. & T. P. Ry. Co., &c., v. Raine.

ants know that a passenger is in the wrong car, and that he must go into another car to reach his destination, they may simply tell him what to do, and ordinarily leave him to follow their directions.

2. Carriers — Transportation of Passengers — Sleeping Car Companies.—Where a passenger had ordered reservation in a sleeping car which was to be attached to the train at a junction and was permitted to sit in another sleeper until the junction was reached, she was not a passenger of the sleeping car company while so doing, and it was not responsible for the failure of its conductor to see that she got into the correct sleeper.

3. Carriers — Transportation of Passengers — Destination of Vehicle.—Plaintiff, having purchased a ticket over three railroads to Atlanta, ordered reservation in a sleeping car which she expected would be on the train she boarded. She was informed by the Pullman conductor in the train conductor's presence that that car would be incorporated into the train at a junction point, and was permitted to remain in the sleeper where she was then located until the junction was reached. After the train had left the junction point, she was informed that the Atlanta sleeper had been placed in a prior section of the train, and she was compelled to return to the point from which she started. Held, that the Pullman conductor in failing to transfer plaintiff, and in permitting her to ride in the wrong car, acted as the agent of the railroad company over whose line the train was operated to the junction point, and that it alone was liable for the damages sustained.

4. Carriers—Injury to Passengers.—When a passenger was required to alight at night at an intermediate station because she had not been placed on the right train, she appeared to be in good health. She went to a hotel, took a room, and, after a while, ordered a fire, remaining there without sleep all night. when she returned to the place from whence she started. She contracted a violent cold which seriously affected her. Held, that such physical condition was not the proximate result of the carrier's default, and that her measure of damages was the expense incurred and the value of the time lost by the delay.

C. R. McDONALD, C. H. RHODES and KOHN, BAIRD, SLOSS & KOHN for appellant Pullman Company.

Cin., N. O. & T. P. Ry. Co., &c., v. Raine.

## POINTS AND AUTHORITIES.

1. Instrument No. 1 gives undue prominence to particular facts and splits the measure of recovery, is argumentative and misleading, and sets out items of alleged damage for which there can be no recovery. (Travelers Ins. Co. v. Clark, 250; So. Covington, etc. v. Nelson, 28 Ky. Law Rep., 289.)

2. The Pullman Company is not a common carrier, nor an innkeeper, and does not furnish transportation. It furnishes extra sleeping and toilet facilities to railroad passengers, and is not responsible for delays or movements of cars. (Beale on Innkeepers, secs. 341, 342, where the cases are collected; 4 Elliott on Carriers, sec. 1616; 2 Hutchinson on Carriers, 1130; Campbell v. Pullman Co., 42 Fed. 484; Williams v. Pullman Co., 3 Southern, 631; Lawrence v. Pullman Co., 10 N. E., 723; Thorpe v. Railroad, 76 N. Y., 409; Ulrich v. N. Y. Central, 15 N. E. 60; Wicher v. B. & A., 57 N. E. 601; Pullman Company v. Gaylord, 9 Ky. Law Rep., 58; Lemon v. Pullman Co., 52 Fed., 262.)

3. It owes no duty to reserve berths. (Searles v. Mann Boudoir Car Co., 45 Fed., 330; Beale on Innkeepers, sec. 347.)

4. It owes no duty of protection where there is no contractual relation. (Pullman Co. v. Campbell, 42 Fed., 484, affirmed 154 U. S., 620; Duvall v. Pullman Co., 62 Fed., 265, certiorai refused, 163 U. S., 684; Williams v. Pullman Co., 3 Southern, 631; Casseday v. Pullman Co., 17 Southern, 373; Lawrence v. Pullman Co., 10 N. E., 723; Calhoun v. Pullman Co., 149 Fed., 546; Hasty v. Sears, 34 Am. St. Rep., 267; Samnelian v. American, 46 N. E., 98; Coughlin v. City, 44 N. E., 218; Byrne v. Kansas, 61 Fed., 605; Central Coal & Iron Co. v. Grider, 115 Ky., 745; Jahn v. McKnight, 117 Ky., 655.)

5. Acts done by its employes in connection with the duty of the railroad company to furnish transportation are not done for, and impose no liability on, the Pullman Company. (Sims v. Pullman, Southern Fed. Cas., 12869-a; Pfaelzer v. Pullman, 4 W. N. C. (Pa.) 240; Bliss v. Pllman, 16 Chicago Legal News, 338; Hutchinson on Carriers, 1137; Duval v. Pullman Co., 62 Fed., 275; Mo. Pac. v. Groesbeck, 24 S. W., 702; Pullman Co. v. Lee, 49 Ill. App., 75; Lawrence v. Pullman Co., 10 N. E., 723; Calhoun v. Pullman Co., 149 Fed., 546; L. & N. v. Fisher, 155 Fed., 68.)

6. Coupon tickets evidence the several contracts of the several roads and not a contract for through carriage. (4 Elliott on Railroads, sec. 1596; Atchison, etc. v. Cameron, 66 Fed., 709; Gulf, etc. v. Looney, 85 Tex., 158; McCullom v. Southern Pacific, 88 Pac., 663; Nichols v. Southern Pacific, 23 Oregon, 123; Spencer v. Lovejoy, 96 Ga., 152; Pennsylvania v. Loftis, 74 N. E., 179;

Cin., N. O. & T. P. Ry. Co., &c., v. Raine.

Duling v. Philadelphia, etc. 66 Mfd 120; 2 Hutchinson on Carriers, 1049-50.)

7. There can be no actionable negligence without the breach of some duty to the injured party. (2 Cooley on Torts, secs. 1410-11; Cumberland v. Martin, 25 Ky. Law Rep., 787; Smith v. Trimble, 111 Ky., 861; L. & N. v. Beeler, 31 Ky. Law Rep.; L. & N. v. Logsdon, 26 Ky. Law Rep., 457; Buch v. Amory Mfg. Co., 69 N. H., 257; Pittsfield, etc. v. Pittszeld Shoe Co., 71 N. H., 522.)

8. If there is no duty ultra the contract, its breach imposes no liability in tort. (Courtenay v. Earle, 10 C. B., 73; Legge v. Tucker, 1 H. & N., 500; Totton v. Ry.. 2 E. & E., 844; Tuttle v. Co., 145 Mass., 169; Rich v. Ry., 87 N. Y., 382; Dustin v. Curtis, 67 Atl., 220; 1 Cooley on Torts 160; L. & N. v. Spinks, 20 S. E., 969.)

9. As between the passenger and the conductor, the ticket is the evidence of passenger rights, and for injuries resulting from observance of the terms of the ticket, no action in tort lies. (L. & N. v. Miles, 100 Ky., 84; Flood v. C. & O., 25 Ky. Law Rep., 2135; Lexington & Eastern v. Lyons; 104 Ky., 23; Southern v. Hawkins, 28 Ky. Law Rep., 364.)

10. After the lapse of a reasonable time to alight at destination, the relation of carrier and passenger ceases. (Kaase v. Gulf, etc., 92 S. W., 444; Chicago, etc. v. Frazier, 40 Pac., 923; Glenn v. Lake Erie, 75 N. E., 282; I. C. v. Lalage, 113 Ky., 896; 2 Hutchinson on Carriers, 1119; Fanning v. St. L., etc., 86 S. W., 354; Flood v. C. & O., 25 Ky. Law Rep., 2135.)

11. The appellee was knowingly on the wrong sleeper; it was her duty to leave it at Danville and offer herself on the right one. (Hancock v. L. & N., 27 Ky. Law Rep., 434; Flood v. C. & O., 25 Ky. Law. Rep., 2135; L. & N. v. Miles, 100 Ky., 84; I. C. v. Cotter, 31 Ky. Law. Rep., 679.)

12. Evidence of a telephone conversation with one not shown to be an authorized agent of the appellants was incompetent. (Planters Oil Co. v. Western Union, 55 S. E., 495; Kimbark v. Illinois Car Co., 103 Ill. App., 632; Thompson v. Appleby, 48 Pacific, 923; Murphy v. Jacke, 36 N. E., 382; Swing v. Walker, 27 Penn. Super., 366; State v. Nelson, 34 Atlantic, 990; Vaughn v. State, 30 Southern, 669; Oberman v. Adams, 36 Ill. App.; Young v. Seattle, 74 Pacific, 375.)

13. So of alleged instructions of the Pullman conductor as to the movement of trains. (I. C. v. Harper, 64 L. R. A., 283; Hancock v. L. & N., 27 Ky. Law Rep., 434; I. C. v. Head, 119 Ky.. 809; Alabama, etc. Carmichael, 9 L. R. A., 388; Sevier v. Vicksburg, 61 Miss.; Nunn v. Georgia Railroad, 71 Ga., 710; C., H. & I. v. Carper, 13 N. E., 122; Southern v. Hobbs, 118 Ga., 227;

Daniels v. R. R., 22 S. E., 956; Webster v. Earwood, 29 E. E., 913; 2 Hutchinson on Carriers, 1121; Gerardy v. L. & N., 102 N. Y. S., 548; Dresser v. Canadian Pacific, 116 Fed., 281; Texas v. Smith, 84 S. W., 853; Calhoun v. Pullman, 149 Fed., 546; Keating v. Mich. Cent., 97 Mich., 154; Lackat v. Lutz, 94 Ky., 288.)

14. There was no duty to assist plaintiff to alight. (I. C. v. Cruse, 29 Ky. Law Rep., 914.)

15. Mental suffering improperly submitted to jury. (Robinson v. W. U. T. Co., 24 Ky. Law Rep., 452; Am. Nat'l v. Morey, 24 Ky. Law Rep., 658; Morse v. C. & O., 117 Ky., 11; I. C. v. Head, 119 Ky., 809; Ricketts v. W. U. T. Co., 30 S. W., 1105; Gulf v. McCormick, 100 S. W., 202; Russell v. Ry., 35 S. W., 724; Ry. v. Scott, 79 S. W., 642; Brenner v. Jonesboro, etc., 100 S. W., 893; B. & O. v. Sheridan, 31 Ky. Law Rep., 109.)

16. Measure of damage was erroneous. (Lexington v. Herring, 29 Ky. Law Rep., 794; So. Cov. v. Nelson, 28 Ky. Law Rep., 287; L. & N. v. Hall, 24 Ky. Law Rep., 2487; L. & N. v. Logsdon, 114 Ky., 746; Paducah Traction Co. v. Burradel, 31 Ky. Law Rep., 1052.)

17. It was error to submit medical expense to the jury. There was no evidence that expenditure was reasonable or necessary. (Storm v. City of Butte, 89 Pacific, 726; Fort Worth v. Morris, 101 S. W., 1039; Elzig v. Bales, 112 N. W., 540; 6 Thompson on Negligence, 7329; L. & N. v. Logsdon, 114 Ky., 746.)

18. The true measure was compensation for delay and expenses (for which there was no claim). (Hurt v. L. & N., 25 Ky. Law Rep., 755; L. & A. v. Kimbrough, 24 Ky. Law Rep., 2409; Early v. L., H. & St. L., 24 Ky. Law Rep., 1807; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky., 157; Wituska v. R. R., 14 Ky. Law Rep., 579; Grant v. R. R., 31 N. E., 220; L. & N. v. Wathen, 22 Ky. Law Rep., 82.)

19. The alleged acts of appellants were not the proximate cause of the alleged injury. (B. & O. v. Sheridan, 31 Ky. Law Rep., 111; Cole v. German Savings Bank, 124 Fed., 113; Clark v. Wilmington, 109 N. C., 430; Goodlander v. Standard Oil Co., 63 Fed., 400; Milwaukee v. Kellogg, 94 U. S., 469; Central of Ga. v. Price, 32 S. E., 77; Pullman v. Stern, 41 So., 383; Chicago, etc. v. Gragg, 81 S. W., 93; Haley v. St. L., etc., 77 S. W., 731; Francis v. St. L., etc., 5 Mo. App., 7; International, etc. v. Addison, 97 S. W., 1037.)

20. Appellee could have avoided all injury by going into the Chattanooga car when told to do so, or by leaving the train at Danville and boarding the Atlanta car when she saw it arrive. It was her duty to do so, and she can not recover for injuries she could thus have avoided. (I. B. & W. v. Birney, 71 Ill., 391; R.

R. v. Hine, 25 So., 857; Gulf v. Head, 15 S. W., 504; Ga. v. McAlister, 54 S. E., 957; I. C. v. Harper, 64 L. R. A., 283; St. L., etc. v. Townsend, 101 S. W., 455; Missouri Pac. v. Groesbeck, 24 S W., 702; Pullman v. Reed, 75 Ill., 125; Raleigh v. Clark, 114 Ky., 732; Sandifer v. L. & N., 28 Ky. Law Rep., 454; Cain v. L. & N., 27 Ky. Law Rep., 201; Ingraham v. Pullman, 76 N. E., 237.)

21. Though the evidence showed contributory negligence, an instruction on this issue was refused. (I. C. v. Harper, 64 L. R. A., 283; 1. C. v. Head, 119 Ky., 809.)

22. Non-expert testimony as to appellee's condition should have been limited to a narration of symptoms. (Illinois Life v. DeLang, 31 Ky. Law Rep., 753.)

23. Her physician could not repeat her statement to him as to the circumstances of her mishap. (Cleaver v. L. & N., 30 Ky. Law Rep., 1059; Shade v. Covington, etc., Co., 119 Ky., 592.)

CHAS. R. McDOWELL for Southern Railway Co. in Kentucky.

HUMPHREY & HUMPHREY of counsel.

It is a well-settled rule of law, that no negligence or tortious violation of a contract can furnish the foundation of an action for damages unless it was the proximate cause of the injury suffered by the plaintiff. It is likewise as well settled, that the burden of showing that the negligence or other wrong was the proximate cause of the injury is upon the plaintiff. The plaintiff must not only prove negligence, but must also prove that the negligence was the proximate cause of the injury for which he claims damages. It is likewise as well settled that the burden is on the plaintiff to show by sufficient evidence: mere surmise and conjecture that the negligence complained of was the proximate cause of the injury are not sufficient.

## AUTHORITIES CITED.

Setter's Admr. v. City of Mayfield, 114 Ky., 60; Scheffer v. Railroad Co., 105 U. S., 249; Bishop on Non-Contract Law, sec. 41; Fowlks v. Southern Railroad Co., 96 Va., 742; Francis v. St Louis Transfer Co., 5 Mo. App., 7; Henry v. St. Louis, Kansas City, &c., R. R. Co., 76 Mo., 228; Southside Passenger R. R. Co. v. Trich and Wife, 34 Am. & E. R. R. Cases, 549; Railroad Co. v. Hope, 80 Penn. St., 373; Block v. Milwaukee St. Ry. Co., 27 L. R. A., 386; The Central of Georgia v. Dorsey, 116 Georgia, 719; Shields. v. Louisville & Nashville Railroad, 97 Ky., 103.

ROBT. HARDING for appellee.

J. F. VANARSDALL, E. M. HARDIN, E. V. PURYEAR of counsel. ·

### AUTHORITIES CITED.

Dwenelle v. N. Y. Central & H. R. R. Co., 8 L. R. A., 2242, 120 N. Y.. 117; Pennsylvania Co. v. Roy, 102 U. S., 141; Thorpe, v. N. Y. Central & H. R. R. Co., 76 N. Y., 406 Silver v. Great Western R. R. Co., L. R. A., 3, 150; Hulburt v. N. Y. Central R. R. Co., N. Y., 154; Morgan v. C. & O. R. R. Co., 32 Ky. Law Rep., 330; Tenn. Cent. R. R. Co. v. Brathe's Admr., 29 Ky. Law Rep., 1279; I. C. R. R. Co. v. Jackson, 25 Ky. Law Rep., 2089; L. & E. Ry. v. Lyon, 20 Ky. Law Rep., 516; L. & N. R. R. v. Fowler, 96th S. 20 S., 69; B. & O. S. W. Ry. Co. v. Sheridan, 31 Ky. Law Rep., 109; Ky. Cent. Ry. Co. v. Biddle, 17 Ky. Law Rep., 1363; M. & Cin. Packet Co. v. Nagel, 15 Ky. Law Rep., 743; Robertson v. L. & N. R. R. Co., vol. 41 Am. and Eng. R. R. Cases, new series 63.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Mrs. Minnie Raine lived in Atlanta, Ga. Her father lived in Harrodsburg, Ky., and she made trips about three times a year from her home to her father's. In January, 1906, she was at her father's and desired to go home on Sunday, January 7th. That morning her father called up the station agent of the Southern Railway in Kentucky at Harrodsburg by telephone, and told him that he wanted a reservation for his daughter in the sleeper for Atlanta on the train that night. That afternoon he called up the station agent, and was told by some one at the station that the reservation had been secured. The train from Louisville reached Harrodsburg about 10:35 p. m. Mrs. Raine bought a through railroad ticket to Atlanta, and with this got on the train at the day coach. She passed

back, walking through two sleepers, where she found the sleeping car conductor. She asked him for the Atlanta sleeper, saying that she had a reservation in there. He told her there was no Atlanta sleeper on the train, but that there would be an Atlanta sleeper which would come from Cincinnati on the train which they would meet at Danville. Danville is 10 miles from Harrodsburg. The Southern train runs from Louisville to Danville, and there connects with the train running from Cincinnati to Atlanta. While she was talking to the Pullman conductor, the passenger conductor also came in. They told her there was a Chattanooga sleeper on that train, and she could go into it and get a reservation at once, advising her to do so as the other train was frequently late, and she might have to sit up some time if she waited for the Atlanta sleeper. She had her little boy, about six years old, with her, and, when she learned that she would have to get up about 6 o'clock in the morning if she did this, she decided not to take the Chattanooga sleeper. They then advised her to sit in the Chattanooga sleeper until she got to Danville, telling her that, when they reached Danville that sleeper would be put next to the Atlanta sleeper, and she would only have to walk from one car to the other, while the Knoxville sleeper, in which she was then, would be put at some distance from the Chattanooga sleeper. She said that she would stay in the Knoxville sleeper with some friends, and they agreed for her to do so. When they reached Danville, the train from Cincinnati was forty minutes late. When she saw it come in, she went to the Pullman conductor, and asked him if he would not go and get her reservation for her. He answered that he was not allowed to leave his sleeper while it was standing at the station;

that, as soon as they were out of Danville, he would see about it; that there would be plenty of time. When her car was attached to the other train, she again made the same request of him, and he made in effect the same answer. When the train pulled out of Danville, she and the Pullman conductor went forward and learned there was no Atlanta sleeper on that train; that the Cincinnati train had on that night been divided into two sections, the Atlanta sleeper being in the first section, and the Knoxville sleeper in which she had been sitting, having been put in the second section. The first section was 10 miles ahead of them. She then said to the Pullman conductor: "Now, see what you have done by not attending to my reservation in Danville." He said: "Madam, I am not to blame. My clothes are on that section too." The train had only been running to Danville a month, and this Pullman conductor had never known the Cincinnati train before to run in two sections, although it happened from time to time when travel was heavy. The Chattanooga sleeper had been put in the first section, and if Mrs. Raine had taken a seat in that sleeper, instead of staying with her friends, there would have been no trouble. The section which she was in went to Knoxville. She talked the matter over with the conductor of the train. He told her that he would wire to Somerset, which was about 50 miles below, and ask that the first section be held there for her. At the next stop, at Junction City, he held his train 10 minutes and did wire to Somerset, but was unable to get an answer. When he was unable to get an answer, he came in and told Mrs. Raine the facts, and they then consulted as to what she had better do. The Pullman conductor had in his pockets the tickets of all the passengers in the Chattanooga sleeper. The

Knoxville train would turn off from the main line at Oakdale, a station about half way between Somerset and Chattanooga. Mrs. Raine did not want to sit up all night, and finally concluded that she would get off there and go back to Harrodsburg, and wait there for the next train. The conductor she says advised her to do this. The conductor says she proposed it; but, however this may be, she got off voluntarily at the station. It was then about 1 o'clock in the morning. She was assigned to a room by the clerk, but declined at first to have a fire made. Afterwards she had a fire made, but did not go to bed. At 4 o'clock she took the train for Harrodsburg, and went back to her father's, and that evening took the train for Atlanta, and went through without trouble. But she had taken a violent cold, and the cold produced a very bad nervous condition approaching hysteria. The bad nervous condition may have been due also in part to the excitement incident to her leaving the train and sitting up all night. After she got home she was sick for two months, and at the trial, a year or more later, her health was still infirm. She brought this suit to recover damages against the Pullman Car Company, the Southern Railway in Kentucky, and the Cincinnati, New Orleans & Texas Pacific Railway Company. On a trial of the case a judgment was rendered in her favor against all the defendants for the sum of $4,000, and they appeal.

The only questions we deem it necessary to consider on the appeal are, first, should the jury have been instructed peremptorily to find for the defendants; second, if not, what is the proper measure of damages?

1. When Mrs. Raine came upon the sleeper, she had nothing but a railroad ticket. She had no sleeping

car ticket, and she had nothing to show that she had any reservation in any sleeper. She remained in the Knoxville sleeper entirely by the courtesy of the conductor. She paid nothing for her seat in that sleeper, and it is evident that he allowed her to remain because she had her little boy with her, and she decided to stay there and talk to her friends until she got to Danville. When the servants of a carrier know that a passenger is in the wrong car and that he must go into another car, they may simply tell him what to do, and ordinarily leave him to follow their directions; but, when they tell him to keep his seat, and that they will at the proper time transfer him to the other car, and fail to do so, the company which they represent is liable. Mrs. Raine was not a passenger of the Pullman Car Company, for she had not been received as a passenger. She had simply been allowed to sit in the sleeper with her friends, and the Pullman Car Company is not answerable to her because its conductor failed to get her in the right car; for he did not represent the company as to the Atlanta sleeper and she had made no contract with the Pullman Car Company, and it owed her no duty. But, while this is so, the Pullman conductor in dealing with Mrs. Raine, who had a railroad ticket, was discharging a duty which the railroad company owed her. The train conductor was with him, and assented to what the Pullman conductor said. In undertaking to transfer Mrs. Raine at Danville to the proper sleeper, and in telling her that she might remain in the Knoxville sleeper until he so transferred her, the Pullman conductor was discharging a duty which devolved upon the Southern Railroad Company. While he might have told Mrs. Raine what to do and left her to follow his directions, a very different state of case is presented when he told her that he would

transfer her to the other sleeper, and for her to sit where she was, that there was plenty of time, and he would attend to it. The passenger conductor was present when the arrangement was made, and he left her in the care of the Pullman conductor. It was incumbent on these men under the circumstances to see that the lady was transferred to the proper train. The servants of a carrier can not mislead a passenger, to his prejudice. It is proper that a passenger should obey the instructions which he receives from them; and when they tell a passenger to keep his seat, and they will at the proper time transfer him, he has a right to trust implicitly their directions. If Mrs. Raine had not been told to keep her seat, that there was plenty of time, she might have protected herself from the consequences that followed.

We therefore conclude that the jury should have been instructed peremptorily to find for the Pullman Car Company, but that the motion for a peremptory instruction as to the Southern Railway in Kentucky was properly refused. It remains to consider whether any liability was shown on the part of the Cincinnati, New Orleans & Texas Pacific Railway Company. Mrs. Raine did not see the conductor of this train until after it had pulled out of Danville. He did not take up her ticket, and evidently did all in his power to rectify the mistake that had occurred, for which he was in no wise responsible. She had remained in the Knoxville sleeper with the consent of the conductor of the Southern Railway, and she had come into the custody of the second line when that sleeper was attached to its train. Junction City was a proper place for her to alight, and, as said, she got off there voluntarily. We therefore conclude that there was no liability on the part of the second line; for it had a per-

fect right to run its train in two sections and to attach the sleepers which came to it from the other line to that section, which best suited its convenience. It had no notice of Mrs. Raine's situation until she saw the conductor after the train pulled out from Danville.

2. It remains to consider what is the measure of damages as against the Southern Railway Company. Mrs. Raine by its negligence missed her train, and was delayed 24 hours in returning home. In Illinois Central R. R. Co. v. Head, 119 Ky. 812, 84 S. W. 752, 27 Ky. Law Rep. 270, this court said: "The evidence presents simply a case where the railroad company agreed to furnish transportation, and failed to do so promptly; if Hupert Head was not guilty of contributory negligence in going to the wrong place for his ticket, and of this the jury must judge. But, if the railroad company was negligent in furnishing the transportation, the measures of damages is simply a reasonable compensation for the time lost by Rupert Head and any expenses he incurred by reason thereof." Mrs. Raine testifies that nobody was on the platform when she got off and that she made her way to the hotel alone, but she did not request the conductor to go with her or to furnish anybody to accompany her, or make any objection to his leaving her. The hotel was near by, and it is evident that she went directly to it. The trouble with her was not that she did not go to the hotel without difficulty, but that after she got there she went into a cold room, and stayed there for some time without a fire. Her nervousness was perhaps largely due to the fact that she remained up all night. But neither one of these things was the proximate result of the negligence of the Southern Railway in Kentucky in failing to transfer her to her train. She no doubt acted as she did

without realizing the danger; but her remaining in the cold room was not due to the act of the railroad company, and all of the consequences which followed would seem to be due primarily to the violent cold which she took afterwards settling upon her stomach and impairing her digestion. A passenger who, by the negligence of a railroad company, fails to make a connection, can not hold the railroad company responsible for consequences which a person of ordinary prudence might not reasonably anticipate as the result. A person of ordinary prudence might reasonably anticipate that one who missed his connection would have to pay a hotel bill and would have to wait until the next train, but, a well-regulated hotel being right at hand, other consequences such as these proved here should not be anticipated. Under all the circumstances, we conclude that the proper measure of damages is such expense as Mrs. Raine incurred and the value of the time which she lost by reason of her not being transferred to the Atlanta sleeper. The rule for the measure of damages in such cases is the same for both men and women; and, if this had been a man, manifestly no other damages would be allowed. There was nothing in Mrs. Raine's condition or appearance to show that she was not capable of taking care of herself, or to apprise a person of ordinary prudence that it was not safe to leave her at Junction City within a few feet of a well-regulated hotel. No recovery can be had for vexation or personal inconvenience by reason of the delay. Robinson v. Western Union Telegraph Co., 68 S. W. 656, 24 Ky. Law Rep. 452, 57 L. R. A 611. Mrs. Raine was treated with courtesy and kindness by all the conductors. The mistake was due to a misapprehension, the Pullman conductor not being allowed to leave his car, and the railroad con-

ductor assuming that the Pullman conductor would get her to the proper sleeper at Danville. The mistake would not have occurred had the Cincinnati train run in one section as it usually did, or if the Pullman conductor had known it was liable to run in two sections. There is nothing in the case to take it out of the general rule as to the measure of damages for delay on a journey.

Judgment reversed, and cause remanded for further proceedings consistent herewith.