## AMELIA SMITH, Respondent, v. PULLMAN COMPANY, Appellant.

### Kansas City Court of Appeals, May 31, 1909.

1. **CARRIERS OF PASSENGERS: Contract: Agency.** In an action on a contract with a sleeping car company to provide a passenger with sleeping car accommodations between designated points, the evidence is reviewed and held to show that the contract was made with agents having authority to bind the company.

2. ————: **Breach of Contract: Damages.** In the absence of malice, willfulness or inhumanity on the part of a sleeping car company, there can be no recovery for fright, alarm, anxiety, humiliation or distress of mind, if these be unaccompanied by physical injury, nor for physical injury wholly caused by mental disquietude.

3. ————: **Petition: Evidence: Variance.** In an action against a sleeping car company for breach of its contract to provide plaintiff and her family with sleeping car accommodations from a designated point to her point of destination, recovery cannot be had on proof that her reservation for such accommodations was from an intermediate point to the point of destination. Recovery must be had, if at all, on the cause of action pleaded in the petition.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,*
Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

1. The plaintiff seeks to recover here upon the theory that she actually entered the car in which she had obtained a reservation and was wrongfully refused permission to occupy it; the evidence for plaintiff and defendant shows without contradiction that the plaintiff did not enter the car on which her reservation had been made nor did she apply for it to the conductor who had it in charge; this being so she cannot recover in this action and the judgment should be reversed. Yall v. Gillham, 187 Mo. 408, 409, and cases there cited; Railroad v. Raine, 113 S. W. 495. 2. Instruction number 2 for plaintiff assumes there was evidence that the plaintiff's reservation was from Cameron; there was no evidence of that fact, hence the instruction is error. Stephen v. Metzger, 95 Mo. App. 626; Holden v. Railroad, 177 Mo. 456. This instruction is also bad because it declares that plaintiff could recover for a breach of contract without also finding that she actually entered the car containing her reservation and was wrongfully ejected therefrom as alleged in her petition. Yall v. Gillham, 187 Mo. 408-9, and cases cited.

*John A. Cross* for respondent.

The agency of a railway ticket agent in contracting on behalf of a sleeping car company to reserve a section or berth in one of its cars may be established by the prior acts, and circumstances attending the same, showing that the company recognized similar contracts made under like circumstances. Nelson v. Car Co., 54 S. W. 624. The evidence of Conklin and Jones, taken in connection with the intimate business relations between appellant and the Rock Island Railway Company, over whose line their cars were run, was ample basis for the introduction of the telegrams in evidence. Nelson v. Car Co., supra; Booth v. Car Co., 28 S. W. 719; Wilson v. Reddick, 131 Mo. App. 456.

JOHNSON, J.—This action is for damages which plaintiff alleges she sustained in consequence of the refusal of defendant to permit her to occupy space reserved for her use in a sleeping car. The suit was brought against the Pullman Company and the Chicago, Rock Island & Pacific Railway Company, but during the trial, the railway company was dismissed. Verdict and judgment were for plaintiff against the remaining defendant, the Pullman Company, in the sum of $500, and the cause is here on the appeal of defendant from that judgment.

Facts disclosed by the evidence introduced by plaintiff thus may be stated: Plaintiff, her husband and son, desirous of making a trip from Cameron, where they lived, to Bisbee, Ariz., and return, applied through the husband to the agent of the Chicago, Rock Island & Pacific Railway Company at Cameron for tickets for the contemplated journey and informed him they wished to secure a whole section in the "tourist" sleeping car to El Paso, Texas. Further, the agent was told they would leave Cameron November 6, 1906, on a passenger train scheduled to depart at about nine o'clock p. m. The train was designated by the railway company as No. 29, and the day of departure selected by plaintiff was known in railroad circles as "Homeseekers' Day." Travel was unusually heavy on such days. The agent had no authority to sell tickets for the Pullman Company—Cameron being a way station—nor had he authority to reserve space in sleeping cars for the use of prospective passengers. Following the usual custom in such cases, he sent to the city passenger agent of the railway company at Kansas City the following telegram, dated November 5th: "Please reserve one section in tourist train No. 29 Nov. sixth for W. B. Smith please give number." At 4:50 p. m. of the same day, the agent at Kansas City answered by wire: "Section two extra tourist car 29 Nov. sixth for Smith." On receipt of this message, the agent telephoned plaintiff's

husband that the section was reserved and received the
reply, "All right, you can figure on me tomorrow night."
The next day (Nov. 6th) plaintiff's family appeared at
the station in time to depart on train No. 29. Her hus-
band bought and paid for the railroad tickets and of-
fered to pay for the section in the sleeping car, but the
agent handed him the telegram from the Kansas City
agent and told him to pay the sleeping car fare to the
Pullman conductor in charge of the car. The agent said
(so the husband testified) : "Take the sleeper right out
of here. Get on this nine o'clock train and go right
back into the sleeper and take the first seat and stay
there until the conductor comes through and he will
show you your berth." The family boarded the train
when it arrived, went into the tourist sleeping car, ex-
hibited the telegram and railroad tickets to the con-
ductor of that car and were told that section No. 2 was
not vacant and that the only berths not taken were two
upper berths at opposite ends of the car. The conductor
thought an extra tourist sleeping car would be attached
to the train at Kansas City and that a whole section
could be obtained in that car. He would not permit the
family to ride in the sleeping car to Kansas City without
the payment of seat fare and they went into the chair
car. The train arrived at Kansas City at about eleven
o'clock and remained there ten minutes. No extra sleep-
ing car was attached. Shortly after leaving Kansas
City, defendant's conductor came into the chair car
and informed plaintiff that he could not give them a
section in his car. Plaintiff's husband had offered to
pay the fare to the conductor for the section from Cam-
eron to El Paso, but the offer was declined. The family
remained in the chair car which was filled with passen-
gers. The journey to El Paso consumed two days and
on the second day, plaintiff was seized with physical
illness so severe that she had to be helped from the car
at El Paso.

Defendant denies that the agents of the Rock Island Railway Company had authority to make reservations of space in its sleeping cars or to represent it in any capacity. It alleges in the answer "that on the 5th day of November, 1906, there was temporarily reserved for one Smith by the Chicago, Rock Island & Pacific Railway Company, upon an extra tourist car engaged for the run from Kansas City to El Paso, leaving Kansas City on November 6th, and known as said Rock Island Railway's train No. 29, to-wit, the second section of said train, certain space numbered and known as section two, but that neither said Smith or anyone for him claimed or paid for said space and that said space remained vacant from Kansas City, Missouri, to El Paso, Texas; that the reservation aforesaid was made as an accommodation merely and without compensation and did not constitute a contract between the plaintiff and this defendant."

It appears from the evidence of defendant that train No. 29 ran from Chicago to El Paso and that on November 6th it consisted of but one train from Chicago to Kansas City, but from Kansas City on, it was run in two sections. The train in which plaintiff rode was the first section and left Kansas City ten minutes ahead of the second section which was made up at Kansas City. The latter train carried a tourist sleeping car which defendant claims was the "extra tourist car," in which space was reserved for plaintiff and to which reference was made in the telegram sent by the Kansas City agent of the Rock Island Railway Company to the agent at Cameron. Defendant offered in evidence its "Ticket Agent's Office Diagram" of the car which shows that section two was reserved for "Smith" from Cameron. Had plaintiff known that space was reserved for her in this car, she could have left the first section of the train at Kansas City and used her railroad ticket on the second section, but she did not know this, nor did she know that

a second train was sent out from Kansas City. Naturally, she remained on the train she boarded at Cameron.

The evidence shows quite conclusively that the diagram mentioned was in the office of the ticket agent of the Rock Island Railway Company at Kansas City at the time the reservation to Smith was entered thereon; that afterwards, a representative of defendant called for it; that defendant used it as a record of the bookings for passage on the car, and that the course pursued in the present instance was the ordinary course of dealing between defendant, the railroad company and travelers using sleeping cars. We agree with defendant that the cause of action pleaded in the petition is the breach by defendant of a contractual obligation to provide plaintiff and her family with sleeping car accommodations from Cameron to El Paso and that she cannot recover in this action on proof that her reservation was from Kansas City to El Paso. The rule is too well settled to require discussion or the citation of cases that the plaintiff must recover, if at all, on the cause of action pleaded in his petition and on no other. But we do not agree with defendant that the evidence of plaintiff fails to show a contract between her and defendant for transportation to begin at Cameron, or that it fails to show a breach of such contract by defendant. As to the question of authority of agents of the railroad company to enter into a contract with plaintiff for reservation of space in defendant's sleeping car, we concede the general rule that the fact of the existence of an agency cannot be established by the acts and declarations of the agent, but in modern times, the stringency of this rule has been greatly relaxed in its application to corporations which can transact business only through agents. [Pullman Co. v. Nelson, 54 S. W. 624.] In the case in hand, we do not find it necessary to abate the ancient rigor of the rule in order to find ample proof of the agency claimed by plaintiff. The agent of the railway company at Cameron had no authority to sell tickets for defendant

or make reservations for space in its cars, but the fact is clearly established that he was a part of the regular channel through which defendant transacted its business with the public at that station. Both defendant and the company that employed him were directly interested in having him attend to the requests of prospective passengers of both companies for sleeping car accommodations and he was but performing one of the duties of his position when he telegraphed to the agent of the railroad company at Kansas City for the reservation for plaintiff. That the latter agent had authority from defendant to comply with the request, we think is established by the evidence of defendant as well as by that of plaintiff. Not only did he assume the right to act for defendant in this case but in so doing he was following the course of business pursued by him for years with the knowledge and consent of defendant. He was provided with sleeping car diagrams by defendant, sold sleeping car tickets, made reservations, and before the time scheduled for the departure of each car, defendant received the diagram of that car at the railroad office and collected the money received by the agent on its account. With facts and circumstances such as these before us, the attempted repudiation of the agency so indisputably established should be rejected as wholly unfounded.

Further, we think the evidence of plaintiff tends to show that a valid contract was entered into between defendant and her husband for her benefit by the terms of which she was to have the use of a section of a tourist sleeping car from Cameron to El Paso. True, the telegrams do not state the initial point of transportation, but what was said and done by plaintiff's husband and the Cameron agent strongly support the inference that both understood and intended plaintiff should have sleeping car service from Cameron, and that this understanding was shared by defendant's representatives at Kansas City. This contract was not performed by defend-

ant and its breach entitled plaintiff to recover from defendant the damages sustained by her which were the natural and direct result of defendant's wrong.

The evidence does not disclose that either plaintiff or her husband suffered any pecuniary loss on account of the breach and unless we should find the evidence warrants the inference that the physical sickness of plaintiff on the train while *en route* to El Paso was a natural and direct consequence of the breach, we must hold that she is not entitled to recover for the reason that she has failed to prove any damage. The rule is well settled in such cases that in the absence of malice, willfulness, or inhumanity on the part of defendant (of which there is no proof in this case) there can be no recovery for fright, alarm, anxiety, humiliation or distress of mind if these be unaccompanied by physical injury, nor for physical injuries wholly caused by mental disquietude. [Crutcher v. Railway, 132 Mo. App. 311.] But we held in the recent case of Heiberger v. Telephone Co., 113 S. W. 730, that where the reality of the cause is guaranteed by proof of a substantial battery of the person, a recovery for mental injury will be sustained, though such injury may not be a consequence of the battery, but merely a co-result. We think the inference that the sickness of plaintiff was directly caused by riding in a chair car is untenable and, therefore, since the wrong of defendant did not produce either physical injury or pecuniary loss to plaintiff, she cannot be permitted to recover damages for mere discomfort or mental pain and annoyance. The conviction is forced upon us that the causal connection between defendant's wrong and plaintiff's sickness may be found only by resort to the merest conjecture and speculation. As far as the record discloses, she was in sound health and condition when she left Cameron and no reason was apparent for her or anyone else to anticipate that a two days' ride in a chair car would cause her physical injury. No other passenger in that well filled chair

car suffered from illness and it is a matter of common knowledge that thousands of persons have made and are making such trips without danger or thought of injury therefrom. The nature of her sickness is not shown. A physician was not called in to treat her. She completed her journey to Bisbee and returned to Cameron, riding the entire way in a chair car. When asked why she did not ride in a sleeping car on the return trip, she said, "Well, if I could stand it out there, I thought I could stand it back." The causes of the myriad ailments that may be grouped under the term "sickness" are as various as the ailments themselves, and it is far more reasonable to believe that plaintiff's illness resulted from some cause such as change of diet and habits than to believe that it was the result of riding in a chair car. The burden is always on a plaintiff to prove that his injury was the proximate result of the wrong alleged and where the proof goes no further than to show that the injury might have resulted from one of a number of causes for only one of which defendant would be liable, the burden is not sustained, because the triers of fact in such case are compelled to resort to conjecture for the ascertainment of the producing cause. The case before us is essentially different from that considered by the Court of Civil Appeals of Texas in Pullman Company v. Nelson, 54 S. W. 624. There the passenger was suffering from a severe illness when she engaged sleeping car accommodations of which fact the defendant was informed at the time. The defendant had reason to anticipate that a person in such condition might suffer physical injury from a breach of the contract, but in the present case, a reasonable person in the situation of defendant would have no occasion to anticipate that a woman in good health would be injured in health as a natural and probable consequence of its breach. [Railway v. Raine, 113 S. W. 495.] The demurrer to the evidence should have

been sustained on the ground that plaintiff has failed to prove any damages directly caused by the wrong alleged.

The judgment is reversed. All concur.