CASE 33—ACTION FOR DECEIT—MARCH 29.

# Exchange Bank of Kentucky v. Trimble.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

J. G. TRIMBLE SUED THE EXCHANGE BANK OF KENTUCKY FOR DECEIT IN THE SALE OF BANK STOCK.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

DEFECT IN PETITION CURED BY ANSWER—LIMITATION OF ACTION FOR FRAUD—PRESUMPTION THAT PRESIDENT KNEW CONDITION OF BANK.

Held: 1. The defect in the petition in failing to allege that the plaintiff could not, by reasonable diligence, have discovered the condition of the bank, was cured by the answer which alleged, that he could by such diligence have discovered its condition, and this issue was submitted to the jury.

2. It is not sufficient for the plaintiff to show that the action was brought within five years after the discovery of the fraud.  He must establish a state of facts showing that he could not, with ordinary diligence, have discovered the fraud until within five years before the action was instituted.

3. Something more than ordinary diligence is required of a bank president to know the condition of the bank in order to exempt him from liability to a person who has suffered loss by a false statement.

4. The undisputed facts in this case show that the plaintiff. by the exercise of ordinary diligence, could have ascertained the condition of the bank more than five years before the institution of this suit, and the peremptory instruction to find for the bank should have been given.

Exchange Bank of Kentucky v. Trimble.

5. Where the facts are such that no other conclusion than that of negligence can be drawn, it becomes a question of law, and should be taken from the jury.

TYLER & APPERSON, ATTORNEYS FOR APPELLANT.

1. The petition does not present a cause of action, and the demurrer thereto should have been sustained.
2. The action is clearly barred by the statute of limitations.
3. The plaintiff, if entitled to any relief, has not pursued the proper remedy.
4. The plaintiff failed to act promptly as he is required by law to do, even if he only discovered the alleged fraud at the time he claims to have done so.  •
5. The plaintiff by his own actions ratified his purchase, and' hence is not entitled to recover anything.
6. The instructions of the court were erroneous.
7. The motion for a judgment notwithstanding the verdict, should have been sustained.
8. The rulings of the court upon the instructions were erroneous.
9. The rulings of the court upon the introduction and rejection of evidence were erroneous.  Zackay's Adm'r. v. Hicks, 7 Ky. Law Rep., 755; Cotton v. Brown, 9 Ky. Law Rep., 116; Wood v. James, 10 Ky. Law Rep., 534; Brown v. Brown, 12 Ky. Law Rep., 282; Cooke on Stocks and Stockholders, 152-157, 159.

Prewitt v. Trimble, 13 L. R., 583; United Society of Shakers, &c., v. Underwood, &c., 9 Bush, 609; Brannon & Co. v. Loving, &c., 6 Ky. Law Rep., 328.

Pomeroy's Equity Jurisprudence, 881-897.

Cooke on Stocks and Stockholders, secs. 160, 165; Pomeroy's Equity Jurisprudence, sec. 916; Bigelow on Frauds, p. 229.

A. T. WOOD, ATTORNEY FOR APPELLEE.

1. The verdict of the jury is not excessive and is fully sustained by the evidence.
2. There was no error of the court in the admission or rejection of evidence, to the prejudice of the defendant.
3. There was no error of the court in the instructions given or refused, to the prejudice of the defendant.  Ward v. Jones, 11 Ky. Law Rep., 273; L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 397; Meaux, &c., v. Meaux, &c., 5 Ky. Law Rep., 548; Trimble v. Ward, 17 Ky. Law Rep., 508; Exchange Bank v. Gaitskill, 18 Ky. Law Rep., 532; Civil Code, sec. 340, sub-sec., 4; Letton v. Young, 2 Met., 561; Danville L. & N. Turnpike Co. v. Stewart, 2 Met., 122; Warford v. Isbel, 1 Bibb, 298; Chesapeake & Nash.

R. R. Co. v. Brown, 12 Ky. Law Rep., 468; Mud River Coal Co.
v. Tipton, 12 Ky. Law Rep., 940; Masterson v. Hagan, &c., 17
B. Mon., 325; L. & N. R. R. Co. v. Earl's Adm'r., 15 Ky. Law
Rep., 184.

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

On June 14, 1882, appellee, Trimble, bought from the
appellant bank, through W. W. Thompson, its then cash-
ier, 100 shares of its capital stock, of $100 each, par value,
for $10,500, and a certificate therefor was duly issued to
him.   Prior to the date of the purchase the capital stock
of the bank had been only $50,000.   About that time, by
virtue of the power given it by charter, it increased its
capital stock to $100,000.   On June 10, 1892, Trimble
brought suit against the bank, alleging that the cashier,
Thompson, represented to him that the bank was solvent,
and its assets good; that it had a surplus of over $10,000,
and was paying a 5 per cent. semi-annual dividend on its
capital stock; and that, if its business was wound up, it
would pay the stockholders $115 on the share.   He fur-
ther alleged that about July 15, 1881, the bank published
a statement of its condition, falsely representing its bills
and notes to be $150,000, the amount due depositors to be
less than $120,000, and its surplus and undivided profits
$8,500; that about January 15, 1882, it had published an-
other statement of its condition, falsely representing its
bills and notes as about $155,000, the amount due deposi-
tors about $125,000, and surplus and undivided profits
about $10,000.   He alleged further that at the time of the
publications and representations by the cashier, who had
authority to make the same, more than $35,000 of the bills
and notes reported as assets were not owned by, and not in
the bank; that many thousand dollars more of the bills

and notes reported as solvent were upon insolvent parties, and that the bank had no surplus; that at the time of the sale there were about $8,000 of old overdrafts by insolvent and worthless parties carried on the books of the bank as assets; that the individual and general ledger of the bank was out of balance to the extent of some $7,000, and there was due depositors $7,000 more than was reported in the statements; that the published statements were false in the respects set out, and were known by the officers of the bank to be false, and were published by such officers without an honest belief that they were true, "and it was the duty of the said bank, its officers and agents, to know the true condition of said bank at the time of the publication aforesaid, and the representations made by the said cash, ier, Thompson, at the time of the purchase of the said stock. . . ." He further alleged that if, at the time of his purchase, the affairs of the bank had been wound up, it would not have paid more than $20 per share; that at the time he made the purchase he relied on the state- ments made by the bank's cashier as true, and upon the published statements of the bank as to its condition; that those were false and untrue to the extent of more than $50,000; and that he did not discover their falsity or learn the true condition of the bank until about February 20, 1888. He accordingly prayed for damages in the sum of $8.500. On demurrer it was objected that the petition did not allege that he could not, by the exercise of reasonable diligence, have discovered the condition of the bank; but as the answer alleged that he could, by the exercise of rea- sonable diligence, have ascertained the condition of the bank, and an issue was made up upon this question, and submitted to the jury by the instructions, it would seem unnecessary to consider this question further.

The statute of limitation was pleaded, and a peremptory instruction asked by the bank upon the theory that the undisputed facts shown by the record are such as to conclusively establish that, by the exercise of ordinary diligence, Trimble could have ascertained the condition of the bank more than five years before the institution of the suit. These facts are that on May 14, 1884, Trimble was elected president of the bank, accepted the office, qualified, and continuously acted as such president until May 5, 1888, during which period he was paid a regular salary of $500 per year for his services, and was present at the bank most of the time during business hours. There is some conflict of testimony as to what, if anything, Trimble actually knew of the condition of the bank's assets and liabilities more than five years before the date at which he brought his suit. But, without inquiring into this question of fact, we shall consider the question whether the admitted facts before referred to are such that no other conclusion than that of negligence on his part can be drawn, in which event the question is a question of law, which should have been decided by the court without the intervention of a jury, and a peremptory instruction should have been given for the bank. It has been held again and again that "it is not sufficient for the plaintiff to show that the action was brought within five years after the discovery of fraud. He must establish a state of fact showing that he could not, with ordinary diligence, have discovered the fraud until within five years before the action was instituted." Zackay's Adm'r v. Hicks, 7 Ky. Law Rep., 755. See. also, Cotton v. Brown, (Ky.), 4 S. W., 294; Woods v. James (Ky.), 9 S. W., 513; Brown v. Brown, (Ky.), 11 S. W., 4. The authorities in this State are abundant as to the degree of diligence required of the

president of a bank in informing himself of the bank's condition, in proceedings to hold him liable for represen- tations made by him or signed by him as such officer, and in proceedings to subject him to liability for exceeding the indebtedness permitted by the charter.    In Prewett v. Trimble, (Ky.), 17 S. W., 356, it was said that "something more than the use of ordinary diligence to know the con- dition of a bank should be required of the president, in order to exempt him from liability to a person who has suffered loss by a false statement." See, also, Society v. Underwood, 9 Bush, 609; Brannin v. Loving, 6 Ky. Law Rep., 328. There is considerable plausibility in the argu- ment that this is a different question from that presented in a case where the bank or the bank's officer is sought to be made liable for false representations to an outsider, and while in such a case the officer will not be heard to say that he had no knowledge of the matters which, as such officer, it was, as alleged in the petition in this case, his duty to know, and which, but for his gross neglect or inattention, would have come to his knowledge, in the case at bar it was not his duty, as between himself and the bank, to investigate the truth or falsity of the repre- sentations made to him when he stood to the bank in the relation of an outsider. But we are of opinion that, if more than ordinary diligence is required of a bank presi- dent to exempt him from liability to persons dealing with the bank, he should be required at least to exercise ordi- nary diligence to ascertain facts which, as president, it was his duty to know, in order to avoid the plea of the statute of limitations to a claim by-him for damages for deceit.    We think, therefore, that the admitted facts raise the presumption that by the exercise of ordinary diligence he could have ascertained the condition of the bank more

than five years before the bringing of the suit, and the peremptory instruction should have been given. This view of the case renders it unnecessary to consider the other questions raised on this record. For the reasons given, the judgment is reversed, and the cause remanded, with directions to award appellant a new trial, and for further proceedings consistent herewith.

Chief Justice Hazelrigg absent.

Petition for rehearing filed by appellee and overruled.