## Louisville & Nashville Railroad Company v. Spurling.

(Decided November 12, 1914.)

### Appeal from Madison Circuit Court.

1.  Carriers—Liability of Carrier Selling Ticket for Transportation Over Its Own and Other Lines for Delays Happening on the Other Lines.—When a railroad company sells a ticket entitling the holder to passage over its own and other lines of road, under a contract with the selling agent that the roads are open for travel and that the passenger can pursue his journey uninterrupted, the selling carrier will be liable for breach of contract if the journey

is interrupted on the other lines of road to the same extent as it would be if the interruption occurred on its own line of road.

2. Carriers—Authority of Agent to Make Contract Binding Carrier for Things That Happen on Another Connecting Line of Road.— Where an agent of a carrier sold a ticket for continuous passage on several lines of road, including his own, the selling carrier was bound by his contract made with the purchaser of the ticket that the journey could be pursued without interruption, although the interruption may have occurred on one of the other roads.

3. Carriers—Tickets—Extent of Liability by Mere Delivery of Ticket. —There is good reason as well as authority to support the proposition that the selling road, by the mere delivery of a ticket calling for continuous passage, is liable for the negligence or breaches of contract of the other roads over which the ticket calls for passage to the same extent it would be liable for negligence or breach of contract that happens on its own line.

4. Carriers—Powers of Ticket Agent to Bind Company.—When a railroad company has established a place on its line of railroad or elsewhere at which tickets may be bought for transportation on its line of road, it thereby invests the agent in charge of its business, so far as the public is concerned, with the implied authority to furnish all reasonable information relating to the transportation of passengers and it will be bound by any contracts or representations that he makes within the scope of his apparent authority. And this authority will bind the company not only as to representations concerning its line but as to representations concerning other lines over which the agent sells tickets.

5. Carriers—Measure of Damages That May Be Recovered for Failure to Carry Out Contract of Transportation.—Where a railroad company assures a passenger that he may pursue his journey without interruption, and that the road is open for travel, and the passage is interrupted, the carrier, in the absence of special circumstances, will only be liable in damages for loss of time and necessary expense incurred by the delay, including the purchase price of the transportation.

6. Carriers—Liability for Failing to Transport Within Time Agreed. —Where a person brings suit against a railroad company for failure to carry him within the time agreed upon when the ticket was purchased, his cause of action lies in contract, and in the absence of special circumstances he is only entitled to recover such damages as were reasonably in the contemplation of the parties at the time the contract was made, and this only includes loss of time and necessary expenses.

7. Carriers—Measure of Damages for Failure to Transport Passenger in Time.—Where a woman bought a ticket under a contract that she would be transported without delay, and her journey was interrupted and she was thereby subjected to inconvenience and annoyance that produced illness, she was only entitled to such damages as would compensate her for loss of time

and necessary expense incurred, and could not recover damages for sickness or other causes.

BENJAMIN D. WARFIELD, BURNAM & BURNAM and SHELBY, NORTHCUTT & SHELBY for appellant.

GRANT E. LILLY, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The principal questions for decision in this suit are: First, what damage, if any, is a passenger entitled to against the railroad company selling the transportation, on account of being unable to go to his journey's end over the road of another company, on which road the ticket sold him by the initial company entitled him to carriage; and, second, did the agent of the initial carrier who sold the ticket have authority to bind it by his assurance that the purchaser could pursue his journey, without interruption over the lines of the connecting carriers?

The case arose in this way: The Louisville & Nashville R. R. Co. has a ticket office at Richmond, Ky., and desiring to go with her children, four in number, aged respectively 16, 11, 7 and 2, to Parma, Missouri, the appellee, Mrs. Spurling, on April 1, 1912, purchased a ticket for herself and children from the agent at Richmond, Ky., to Parma, Mo., paying therefor $31.00. The tickets entitled the party to transportation over the L. & N. R. R. to Louisville, and over the Illinois Central from Louisville to Cairo, Ill., and over the St. Louis & Southwestern from Cairo, Ill., to Parma, Mo. The transportation for all the party was embraced in one "party ticket" good for carriage over the roads named from place of purchase to place of destination. It was what is known as a "coupon ticket," the ticket for transportation over each road being a separate coupon, but all of them were connected on one piece of paper. It was not signed by the purchaser, but at the head of the ticket there were conditions relating to "time of passage," "stop-overs," "transferability," "baggage," "alterations," and "responsibility."

Mrs. Spurling and her children, on April 1, 1912, entered upon their journey at Richmond, Ky., and were carried by the L. & N. R. R. Co. from that point to Louisville, Ky., where they arrived about six o'clock in the afternoon. From Louisville to Cairo, Ill., the ticket called

for transportation over the Illinois Central R. R., and about nine o'clock in the evening of April first the party left Louisville on this road and arrived at Paducah about four o'clock in the morning of April second. On their arrival at Paducah they were informed, as will later appear more in detail, that no trains were running from Paducah to Cairo, and, after waiting about six hours in Paducah, she purchased tickets for herself and children from that place back to Richmond, Ky., and returned to her home at Richmond, leaving Paducah about ten o'clock in the morning of April second, and arriving at Louisville at six o'clock that evening. She remained in Louisville that night and on the next morning left for Richmond, at which place she arrived about noon.

In her petition as amended she averred, in substance, that before she purchased the ticket at Richmond she inquired of the agent if she would be able to go by Paducah to her destination, and she was assured that the road was open and that she could go that way; that upon her arrival at Louisville she was advised by a telegram that she could not reach her destination by way of Paducah on account of flood conditions, and requested the agent of the L. & N. at Louisville to change her ticket so that she might go by St. Louis, which was an open and available route, but the agent refused to change her ticket and assured her that she could go by Paducah as the road was open. That when she arrived at Paducah she could not go farther on account of the flooded condition of the country, which made the passage of trains impossible from Paducah to Cairo, and thereupon she purchased return tickets and came back to her home.

For the humiliation, discomfort and privation to which she alleged she was subjected, as well as for alleged illness contracted as a result thereof, she asked judgment for one thousand dollars in damages and in addition thereto judgment for $52.85, the amount expended in purchasing the tickets from Richmond to Parma and from Paducah to Richmond.

On a trial of the case before a jury there was a verdict in her favor for $1,052.85 against the Louisville & Nashville R. R. Co., the only defendant, and judgment entered accordingly.

On this appeal we think it well to state with more fullness than usual the evidence, so that the issues of law arising on the facts may be clearly applied.

When Mrs. Spurling went to Richmond to purchase

the ticket, she testified that she received information that on account of high water she could not go to her destination by way of Paducah, and upon receiving this advice requested her brother, who accompanied her to the station at Richmond, to inquire of the agent whether she could go through by way of Paducah.

Her brother, Mr. C. C. Snowden, testified as follows: "Tell the conversation that occurred between you and the agent at the time of the purchase of this ticket. A. There was some rumor of it being flooded in the western part of the State and at Cairo, Ill., and that was the way she was directed to go; had to go by way of Paducah; and I had gotten a little rumor and I thought probably it might be best to investigate the matter before purchasing the ticket, and I asked the L. & N. ticket agent at Richmond what he thought, and he said he had not 'been informed of any flood. I said, 'Would you not think you would likely be informed if there were any floods?' and he said 'Yes.' I said, 'Do you think it would be safe for her to purchase tickets to go that way?' He said he thought so; it was his best judgment. So I purchased the ticket by the way of Cairo, Ill.

"Q. After that did you have communication with her with reference to flood conditions? A. Yes, sir; after I got back home I received a letter from her husband stating * * *. A. Did you communicate that to Mrs. Spurling in any way? A. I did. Q. Where? A. At Louisville. Q. By telegram? A. Yes, sir. Q. Which one of the agents were you talking to? A. To the agent at Richmond, and I asked him to do it, and he gave me directions and I called up central here and had the telegram sent her. Q. Who dictated the contents of the telegram? A. The ticket agent at Richmond. Q. To whom did you address your telegram that you referred to a while ago? A. To the L. & N. ticket agent; that is the orders and advice I got from the ticket agent at Richmond."

Mrs. Spurling testified that when she arrived at Louisville she received a telegram from her brother.

"Q. What was the contents of the telegram? A. He said for me to exchange my ticket and go by the way of St. Louis on account of the high water. Q. After you received the telegram, did you see any of the officials in the depot? If so, what was the conversation between you and them? A. I didn't see any one I remember of except the agent. I wanted to exchange the ticket and he would not exchange it. I showed him the telegram and told

him my brother told me to exchange the ticket and go around by way of St. Louis, and he said he could not. Q. What did he say about the continuation of the journey? A. He said I could get through.''

She says that she then went from the L. & N. depot to the Illinois Central depot and took passage there on the Paducah train, and arrived at Paducah next morning at four o'clock. With reference to what took place at Paducah she was asked:

"Q. When you got to Paducah, what did you ask about the continuation of the trip and whom from? A. I asked the ticket agent there and he said there were no more trains coming. I waited six hours. Q. After you received the information from the agent that there would be no more trains going on your journey, what did you then do? A. Purchased a ticket back. Q. What did the agent at Paducah tell you? A. Well, he told me I could not get through; there would not be any other train to go through. He didn't offer to do anything at all; just told me there was no other train going through, and I bought the ticket from him back.''

The ticket agent at Richmond said: "Mr. Snowden came up to the window and asked me about the rates to Parma, Mo., and I quoted him rates, and he asked me if I knew anything in regard to the flood conditions, and I told him I did not, and had not had any instructions not to sell tickets by that route.''

J. L. Wilkes, chief train dispatcher for the Illinois Central R. R., testified as follows: "Q. I will ask you first whether or not on April 1, 1912, there was any interruption of traffic on account of high water? A. None on April the first. All of our regular trains operated as usual. Q. Was there any interruption of travel on the second? A. There was. Q. What time? A. The complete interruption came at 9:35 a. m. on the morning of April the second, 1912. Q. Was traffic interrupted on that day? A. On April second the train that passed over this territory between Cairo and Paducah left Cairo at 5:30 a. m. and arrived at Paducah at 9:05 a. m. A train which left Paducah at 11:35 p. m. on the second, arrived at Cairo at 2:38 a. m. on the third. Traffic was interrupted from 9:35 a. m. until 11:20 p. m. Q. What was the cause of the interruption? A. The track was interrupted by high water. The particular cause of the interruption was the washing of the dump fills from under the ends of the ties to such an extent it made it unsafe.

Q. What river was it? A. Well, the waters that gave us the trouble were back waters. Q. When was the first notice sent out by you that any interruption in traffic could be expected? A. We did not anticipate any interruption of traffic on this particular track at all. We have a passenger train which is due to leave Paducah at 9:10 a. m. to go to Cairo, and just previous to the time we expected to operate this train, which was about 9:25 a. m., we received notice we could not get it over this water. Q. What provision, if any, was made by the Illinois Central for taking care of passengers that were detained on account of the high water? A. All passengers who notified us of having to turn back, or being destitute, or anything of that kind, or wanting assistance, were immediately provided with transportation back, or provision made to take care of them."

There is also some evidence, although meager and unsatisfactory, that flood conditions had stopped the running of trains on the St. Louis & South Western for at least a part of the distance between Cairo and Parma, and that this condition existed on April first. It further appears from the evidence in behalf of Mrs. Spurling that she was subjected, on account of lack of funds and inexperience in traveling, to considerable annoyance and inconvenience, as well as embarrassment on the return trip from Paducah to Richmond, and as a consequence was made nervous and sick, and her health, to some extent, impaired. But in the view we have of the law applicable to the case, it does not seem necessary to spend further time on the features of the case relating to her trip and subsequently arising.

Taking up now the grounds on which the liability of the railroad selling the ticket may be put, we find that counsel for Mrs. Spurling insist that the ticket itself implied a contract for continuous, uninterrupted passage, and therefore by the mere delivery of the ticket the initial carrier contracted for the safe and prompt passage of Mrs. Spurling to the point of destination.

While counsel for the railroad company insist that the condition in the ticket, under the head "responsibility," reading, "In selling this ticket for passage over other lines and in checking baggage on it, this company acts only as agent and is not responsible beyond its own line," limited its liability to its own line, and as it is admitted that no inconvenience or delay was suffered by Mrs. Spurling on its line, the jury should have been

directed to return a verdict in its favor. This argument of course assumes the validity of this limitation in the ticket, and at the same time denies the authority of the agent who sold the ticket to bind the company by his assurances that the journey could be continued without interruption.

There is room for much difference of opinion as to whether the selling road is liable for the breaches of contract or negligence of connecting roads over which it sells transportation, this difference of opinion depending to some extent on the nature of the contract, whether evidenced by ticket or otherwise. There is, however, good reason as well as authority to support the proposition that the selling road, by the mere delivery of a ticket for continuous passage, is liable for the negligence or breaches of contract of the other roads over which the ticket calls for passage to the same extent it would be liable for negligence or breach of contract that happened on its own line.

But in view of the fact that the cause of action here was rested on the assurances made by the agents at Richmond and Louisville, and the case practiced on this theory of liability, it is not necessary to consider the right of a railroad company, that sells a ticket over its own and other lines, to limit its responsibility to things that happen on its own line, or its liability for the negligence or breaches of contract of the connecting carriers. But in no event, as we think, could the initial carrier, or either of the other carriers, by virtue of the ticket issued to Mrs. Spurling, be held responsible for delays in transportation that were occasioned by unprecedented floods and high water.

Coming now to the effect of the assurances made by the agents at Richmond and Louisville, it may be doubted if they should be construed into an implied contract that Mrs. Spurling could go through by way of Paducah without interruption: but, assuming that what each of them said was such an assurance, and further assuming that the agent at Paducah told her that no more trains would go through, and that this flood condition existed on and before April first, and further assuming that she was subjected to considerable annoyance and embarrassment, that resulted in nervousness and ill-health, as the consequence of her failure to go to her destination, let us now see how the case stands.

The ticket purported to afford Mrs. Spurling and her children continuous passage from Richmond, Ky., to Parma, Mo., over the lines of the Louisville & Nashville, the Illinois Central, and St. Louis & South Western railroads, and evidently there must have existed at that time traffic arrangement between these railroads by which each was authorized to sell tickets entitling the holder to transportation over the lines of the other. What this traffic arrangement was the record does not disclose, nor indeed is it material to this case that it should. The essential fact is that the Louisville & Nashville R. R. Company, through its agent at Richmond, had authority to and did sell this ticket for transportation over these other roads, and this authority we think conferred upon the agent the power to bind the Louisville & Nashville Railroad by any representations or assurances that he made to the purchaser relating to the transportation contemplated by this ticket from the initial point to the place of destination.

In Louisville & Nashville R. R. v. Scott, 141 Ky., 538, this court, in speaking of the power of a ticket agent to bind the company by his representations relating to the ticket, said: "Of course it is elementary that an agent has no authority to bind his principal, unless he is acting within the apparent scope of his authority, but we think that when a railroad company has established a place on its line of railroad, or elsewhere, at which tickets may be bought for transportation upon its line of road, it thereby invests the agent in charge of its business, so far as the public is concerned, with the implied authority to furnish all reasonable information relating to the transportation of passengers, and concerning the movement of passenger trains, and with the power to bind it by any agreements made by him or information furnished by him within the line of his duty. And we are also of the opinion that it is within the line of his duty to give information and make representations in reference to the rights of passengers holding tickets that he sells to them. The public has the right to go to such an agent for information concerning the movement of trains upon which they desire to take passage, and they have the right to rely upon the statements made by him concerning such matters. It would be a curious state of affairs if an agent having the express authority to sell tickets for transportation to and from different points did not also have the authority to give reasonable and

proper information concerning the trains upon which such tickets might be used and the places at which trains would stop to receive and discharge passengers holding tickets sold by him. And so, when the ticket agent of a railroad company agrees with or informs a person desiring to become a passenger that the ticket will be good on certain trains, or that certain trains upon which it may be used will stop at a designated place to let such person on or off, the company will be bound by his agreements or representations or by the information furnished by him in the absence of knowledge upon the part of the purchaser of the ticket that the agent had no authority to make such an agreement or that the information given was incorrect, and when the ticket does not contain agreements or conditions by which the passenger's rights are to be determined." To the same effect are St. Louis & Southwestern Ry. v. White, 99 Tex., 359, 13 A. & E. Ann. cases, 965; Kansas City, Ft. S. & M. R. R. Co. v. Little, 66 Kan., 378, 61 L. R. A., 122, 97 Am. St. Rep., 376; Hayes v. Wabash Ry., 163 Mich., 174, 31 L. R. A. (n. s.), 229.

And we think this reasonable and correct rule should be applied to cases in which the agent sells a ticket entitling the holder to passage over the road he represents, and also over other roads. There seems to us no good reason why an agent of one company, who is invested with authority to sell tickets over other roads, should not have the power to make representations relating to transportation over these other roads and to bind his principal to the same extent as it would be bound concerning representations made by him about similar matters relating to transportation on its line of road. There was no condition in this ticket denying to the agent authority to represent that the journey could be made to destination without interruption or to give assurance that the road to the place of destination was open for travel. We therefore think the initial carrier was bound by the assurances made by its agent upon the faith of which the ticket was purchased to the same extent as if the ticket had been sold upon an express agreement that the journey could be completed without interruption on account of high water.

In Hutchinson on Carriers, Third Edition, Vol. 2, Sec. 1049, it is said: "But when the passenger has received from the carrier a number of such coupon tickets, one for his passage over the route of the first and others as

passports over the lines of succeeding carriers, the rule applicable to common carriers of goods, by which a through bill of lading and the payment of through freight would make the first or contracting carrier responsible for their safe transportation throughout their whole route to destination, does not apply, and such tickets are held not to import a contract on the part of the first carrier, from whom they are received, to be responsible for the carriage of the passenger beyond its own line."

And in Section 1050: "There is, however, nothing in the employment of such tickets inconsistent with the idea of a contract for such transportation by the first carrier which will make him the responsible party to the passenger for all injuries or losses throughout the entire journey. It may therefore be shown that there was such a contract, notwithstanding the acceptance of such tickets, and that the tickets were delivered in pursuance of the contract; and whether or not there was such a contract must, in every case of the kind, depend upon the facts." To the same effect are: Elliott on Railroads, Vol. 4, Sec. 1596; Thompson on Negligence, 2d Ed., Vol. 3, Sections 3348-3371.

In Pennsylvania Company v. Loftis, 72 Ohio St., 288, 3. A. & E. Anno. Cases, 3, the court, after stating the general rule that a carrier of passengers by the issual of a ticket over other lines does not oblige itself to become responsible beyond its own line, said: "Yet it is equally true, and not less well settled, we think, that a railway company selling a ticket for the transportation of a passenger beyond its own line of road, may by contract, either express or implied, make itself responsible for the safe carriage of such passenger over the entire route covered by the ticket sold." To the same effect is Pennsylvania R. R. Co. v. Jones, 155 U. S., 333, 39 L. Ed., 176.

Many other authorities supporting this principle might be referred to, but the foregoing sufficiently illustrate the weight of authority upon this subject.

The remaining question in this case relates to the measure of damage. Upon this subject the lower court instructed the jury that if they found "for the plaintiff, Laura Spurling, they should allow her such a sum in damages as they may believe from the evidence will represent the sum paid by the plaintiff for tickets from Richmond, Ky., to Parma, Mo., and from Paducah to Richmond, and any other expenses reasonably incurred by the plaintiff in returning from Paducah to Richmond,

but if any amount is allowed the plaintiff on this account, it should not exceed $52.85, the sum claimed by the plaintiff.

"And if the jury find for the plaintiff and further believe from the evidence that by reason of the facts above stated, if they find they existed or occurred, she suffered any discomfort or was rendered sick and her health impaired, the jury should also allow her such further sum as they may believe from the evidence will fairly and reasonably compensate her for such discomfiture or impairment of her health, but the total damages, if any, allowed on this account should not exceed $1,000, the sum claimed by the plaintiff on that account, and the total damages allowed the plaintiff, Laura Spurling, if any, should not exceed $1,052.85, the total damages claimed by her."

This instruction did not, as we think, present the correct rule as to the measure of damages to which Mrs. Spurling was entitled, or the one in harmony with the authorities. The general rule applicable to cases like this obtaining in this State and elsewhere is that the complaining party is entitled to recover damages for loss of time and necessary expenses incurred, including the purchase price of the transportation. Illustrating this is C., N. O. & T. P. Ry. v. Raine, 130 Ky., 454.

In that case it appears that Mrs. Raine, who was visiting in Harrodsburg, Ky., desiring to return to her home in Atlanta, Ga., purchased a through ticket and took passage on a train in which sleeper reservations had been made. It seems that by some mistake or oversight on the part of the trainmen Mrs. Raine, at Junction City, a point on the road, was compelled to leave the train about one o'clock at night and go to a hotel nearby. As the result of the exposure and discomfort attending this interruption, she contracted a violent cold that produced sickness and nervous conditions. Some time after this she brought suit to recover damages, and there was a judgment in her favor for $4,000. In considering the measure of damages to which Mrs. Raine was entitled, the court said:

"A passenger who, by the negligence of a railroad company, fails to make a connection, cannot hold the railroad company responsible for consequences which a person of ordinary prudence might not reasonably anticipate as the result. A person of ordinary prudence might reasonably anticipate that one who missed his connection would have to pay a hotel bill and would have to

wait until the next train, but, a well-regulated hotel being right at hand, other consequences such as these proved here should not be anticipated. Under all the circumstances, we conclude that the proper measure of damages is such expense as Mrs. Raine incurred and the value of the time which she lost by reason of her not being transferred to the Atlanta sleeper. The rule for the measure of damages in such cases is the same for both men and women; and, if this had been a man, manifestly no other damages would be allowed.

"There was nothing in Mrs. Raine's condition or appearance to show that she was not capable of taking care of herself, or to apprise a person of ordinary prudence that it was not safe to leave her at Junction City within a few feet of a well-regulated hotel. No recovery can be had for vexation or personal inconvenience by reason of the delay."

Again, in Illinois Central Ry. Co. v. Head, 119 Ky., 809, a case in which a passenger who was delayed in his journey by the negligence of the railroad company brought suit to recover damages, the court said: "The evidence presents simply a case where the railroad company agreed to furnish transportation, and failed to do so promptly, if Rupert Head was not guilty of contributory negligence in going to the wrong place for his ticket, and of this the jury must judge. But if the railroad company was negligent in furnishing the transportation, the measure of damages is simply a reasonable compensation for the time lost by Rupert Head and any expenses he incurred by reason thereof." To the same effect are: C. N. O. & T. P. Ry. v. Rose, 115 S. W., 830; Sedgwick on Measure of Damages, Vol. 3, Section 863; Sutherland on Damages, Vol. 3, Section 936.

We have not been referred by counsel for Mrs. Spurling to any authorities that conflict with the ones cited, nor do we find in the record any facts or circumstances that would authorize us to take this case out of the rule laid down in the authorities referred to. Mrs. Spurling was not subjected to any delay or inconvenience until she reached Paducah. At this place she had presented to her three alternatives: she could have waited until the road was open; or she could have returned to Princeton or Louisville and proceeded to her destination over another route; or she could have returned to her home, and she chose to do the last, influenced doubtless to take this course by her inexperience and lack of funds.

But the same principles would, under the facts of this case, limit and control her right of recovery, whichever one of these three courses she pursued.

The case presented and made out by Mrs. Spurling was founded in contract, not tort. It rested entirely on the breach of contract committed in failing to transport her to her destination without interruption or delay.

The cause of action being in contract, the rights of the parties are to be determined by the rules regulating ordinary contracts. When Mrs. Spurling purchased the ticket, the agent making the assurance that travel was open could not have anticipated what course Mrs. Spurling would pursue in the event of interruption or delay in the carriage. He was not asked to, nor did he, make any suggestions as to what she should do in the event her journey was interrupted by high water or other cause, and he could not of course have foreseen what did actually happen. No facts were brought to his notice that would impose upon him any greater duty than he would owe to any other adult person who purchased tickets and to whom he might give assurances similar to those made to Mrs. Spurling.

The fact that Mrs. Spurling was inexperienced and not well supplied with funds, is not entitled to any weight whatever in considering the liability of the company or the measure of damage to which she is entitled. She occupies exactly the same position as an experienced, well-to-do traveler would occupy under similar circumstances. The agent did not know of her inexperience or lack of funds or her inability on this account to take passage over some other route, or to remain in Paduach until the road was open. She was making the trip as an ordinary passenger in the ordinary way. The company could not have anticipated that this delay in transportation would produce nervousness or sickness, nor was there anything connected with the initial transaction that should have put the company on notice that delay or interruption in the travel would produce these results. And there is no claim that any special damages were sustained by reason of the delay except those that resulted, as she claimed, in producing nervousness and illness.

For the breach of contract she is only entitled to such damage as was reasonably in the contemplation of the parties at the time the contract was made, and this, under the facts stated, should be limited to compensation for loss of time occasioned by the delay, money expended in

purchasing tickets, and the necessary expense she incurred in returning to her home.

Having this view of the law applicable to the case, the judgment is reversed, with directions for a new trial on principles consistent with this opinion.