## Louisville & Nashville Railroad Company v. Wells.

(Decided May 6, 1927.)

### Appeal from Harlan Circuit Court.

1. Carriers.—In action for damages by passenger against railroad for putting her off at wrong station, damages recoverable, where carrier's breach of contract was not tortious, were such as would compensate passenger for loss of time occasioned by delay and extra expense caused thereby.

2. Carriers.—Action of carrier in putting off female passenger at wrong station held not tortious breach of contract, where passenger was discharged at depot of city in which she could be and was well cared for.

3. Carriers.—Female passenger put off at wrong station could not charge against carrier physician's bill incurred due to cold contracted in unheated ladies' waiting room in station, where main waiting room was heated.

4. Carriers.—In action by passenger against carrier for damages on account of being put off at wrong station, testimony of passenger that she was going to see a sick relative held inadmissible, where carrier had no notice of purpose of visit.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, LOW & BRYANT, J. C. ADKINS and J. C. BAKER for appellant.

GEORGE R. POPE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellee on January 21, 1925, bought a ticket from Dayton, Ohio, to Evarts, Ky. She rode from Dayton to Cincinnati on the Big Four and there changed to the road of the appellant. In order to get to Evarts it is necessary for travelers from Cincinnati to change

trains at Corbin, Ky. Appellee left Cincinnati on the night of January 21st. She testifies that when the conductor came to collect her ticket he told her, after he had ascertained her destination, that she would have to change cars at Winchester. She says that as she knew no better she relied on his statement. She says that she then dozed in her seat until just before her train reached Winchester, when the conductor came to her and said that this was where she had to transfer. She inquired of him, as she says, how long it would be before her train to which she would have to transfer would come through Winchester, and he responded: "About ten minutes." She says that pursuant to these directions she got off the train at Winchester and walked into the main waiting room where the ticket office was. She admits that this room was warm. Instead of staying in this room, she went into an adjacent room, which was the ladies' waiting room, and which she says was very cold. She sat down to wait the arrival of her train, and, it not coming, she went, in about half an hour, back into the main waiting room and inquired of the ticket seller as to when her train would come. She then learned that she ought not to have gotten off the train she did but should have stayed on it until it got to Corbin. She further learned that there would be no other train which she could take until the next day. She admits that the ticket seller at once called up a nearby hotel, and in a very short time the porter of the hotel came to the station, got her grips, and escorted her to the hotel, where she stayed until the next morning. She then went on her way to her destination, arriving there about 24 hours later than she would have arrived had she not gotten off at Winchester the night before. She claims that due to the lack of heat in the ladies' waiting room she contracted a very severe cold. The conductor of the appellant, although being unable to recall having seen appellee at all on the train that night, denies that he made any such statement as is attributed to him by her. Due to the peculiar character of the punch mark in appellee's ticket, he had to admit that he had punched appellee's ticket, and so necessarily must have seen her, yet he is positive that he made to no one any such statement as is attributed to him, as he well knew that the change was at Corbin and not at Winchester. The ticket agent at Winchester says that the appellee inquired of him about her train just as the train from which she had alighted was pulling out of the station and which

was within 10 minutes after her arrival. He also says that the station was thoroughly heated by radiators in all of its rooms. The appellee brought this action to recover damages by reason of the facts hereinbefore set out, and on the trial was awarded a verdict for $300. From the judgment entered therein this appeal is prayed.

In submitting this case to the jury, and it is agreed that under the testimony of the appellee it was a submittable case, the court properly confined her damages, if the jury found for her at all, to such as would reasonably compensate her for loss of time occasioned by her delay in Winchester and the extra expense she was put to by reason of the delay. That the court did properly in this is established by the case of Louisville & Northern Ry. & Lighting Co. v. Comley, 169 Ky. 11, 183 S. W. 207. In that case we pointed out that this court has uniformly held that since an action, as is this one, is for breach of a contract, the damages recoverable are limited to compensation for loss of time and expenses incurred by the delay unless the contract is broken in such manner as to constitute a tort, and if so that then the damages are recoverable as in a case of tort. This case was cited and followed in the later case of L. & N. R. Co. v. Pigg, 206 Ky. 470, 267 S. W. 549. So here, as in the Pigg case, we need only consider the proof to determine whether the breach of contract claimed by appellee was tortious. That it was not is clear. It was so held under very similar circumstances in L. & N. R. Co. v. Spurling. 160 Ky. 819, 170 S. W. 192, Ann. Cas. 1916A, 487. As in the Spurling case, the appellee here was put off in a depot in a large city where she could be and was safe, comfortable, and well taken care of. There was no element of a tortious breach of contract present in this case, and hence the court properly confined her measure of damages to the extra expense she was put to and for her loss of time. The maximum amount of expenses she claims she was put to by reason of this delay was $35, and part of this she could not justly charge against the appellant because some of it was incurred, as she says, in the payment of a physician's bill to attend the cold she claims she caught because she waited in a cold room. Conceding that she was correct in her contention that the ladies' waiting room was cold, yet as the main waiting room hard by was warm, as she admits and as she gives no adequate reason why, when she found the ladies' waiting

room cold, she did not go into the warm waiting room, it is plain that if she chose to remain in a cold waiting room instead of going into the warm waiting room her consequent cold is due entirely to her own fault. So far as her loss of time is concerned, there is an utter failure of proof to show its value. It results, therefore, that the only competent proof of any damage she sustained did not exceed the sum of $35 at the very outside, and therefore a finding of $300 was grossly excessive.

On a retrial of this case the court will exclude from the jury all testimony of the purpose of appellee's visit to Evarts, it being that she was going to see a sick relative, since it is not contended that the appellant had any notice of the purpose of her visit.

The appellant's motion for an appeal is sustained and the judgment is reversed, with directions to grant appellant a new trial consistent with this opinion.