## Louisville & Nashville Railroad Company v. Manness.

(Decided October 2, 1928.)

### Appeal from Laurel Circuit Court.

1. Carriers.—In passenger's action for damages against railroad for being carried beyond her destination, evidence held to present question of fact for jury whether she voluntarily left train and otherwise exercised ordinary care in walking back to her destination.

2. Carriers.—When contract of carriage is tortiously broken, as when no effort is made by carrier to look after passenger's safety or comfort, and passenger suffers injury therefrom, damage should be assessed under the tort rule, and carrier must compensate passenger not only for lost time and expense incurred, but for the inconvenience, discomfort, injury, or illness directly resulting.

3. Damages.—It is passenger's duty, when delay occurs, before he is required to leave car before journey is completed, or is carried beyond his destination, to exercise such reasonable care as a person of ordinary prudence would exercise to minimize the damages, and he cannot recover for any suffering or loss due to his own want of ordinary care.

4. Evidence.—Passenger suing railroad for damages because she was carried beyond her destination held not precluded by her answer to hypothetical question as to what she might have done had there been hotel accommodations at place where she left train, though her answer could properly be considered by jury.

5.    Trial.—In passenger's action against railroad for being carried beyond her destination, instruction on measure of damage held erroneous in permitting jury, if they awarded plaintiff recovery for alleged tort, to award her compensation for any impairment of her ability to earn money, or to perform her ordinary duty, and also for prospective damages of same character; there being no evidence respecting such matters.

6.    Carriers.—In passenger's action against railroad for being carried beyond her destination, testimony that after she walked back to destination she was overtaken by a rainstorm, from which she caught a cold and experienced great discomfort, held incompetent; railroad not being responsible for what occurred to passenger after she reached her destination, or after she ceased to be a passenger.

WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN, GEORGE G. BROCK and H. C. GILLIS for appellant.

WILLIAM LEWIS & SON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Mrs. Laura Manness, while a passenger on a Louisville & Nashville Railroad train, on the 11th of April, 1926, en route from Corbin in Whitley county to Gatum in Harlan county, was carried beyond her destination. In a suit for damages occasioned thereby, she recovered a judgment for $500, and the railway company appeals.

Appellee's brother, who lived in the mountains 6 miles from Gatum, was seriously ill. She was on her way to visit him, and he had arranged for her to be met on her arrival and taken to his house. She had never been in that section before. She boarded the train at Corbin at 6 a. m. and it arrived at Gatum at 9 a. m. The station was not called, nor was the succeeding station of Rae called. At Putney, some 5 or 6 miles beyond Gatum, appellee was informed by a lady passenger that she had passed her destination. She attracted the attention of the conductor and explained the situation to him. Her version of what followed is that he told her he would carry her to the end of the line and bring her back on the evening train which arrived at Gatum at 8 p. m., or that she could get off there. She asked the distance back to Gatum, and he told her it was a short way. She told him she did not want to be put off at Gatum at night and would leave the train, whereupon he told her to hurry and get off. He treated her civilly, but made no suggestion as to how she could return to Gatum, or as to any

accommodations she could get at Putney. There was no station agent at either of the stations named, nor any depot except a sided box car for the accommodation of passengers. She saw one house in Putney about 40 or 50 yards from the station, and made no effort or further inquiry as to whether she could receive any accommodations at that place, and on cross-examination admits that she would not have remained even if such accommodations had been present. At any rate, she immediately started walking the railway tracks back to Gatum, arriving about 11:30 a. m. There were no accommodations of any kind at Gatum, and she procured a mule from a farmer living about a half mile distant and resumed her journey. She further states that the walking tired her and caused her legs to swell, producing much discomfort. Also in passing through a tunnel she was frightened.

The conductor, the only witness for appellant, admits the station at Gatum was not called, and that he did not enter the car after the train left Harlan, some distance back, until called by appellee. He claims that he told her he would either take her to Lynch and bring her back on the train that arrived at Gatum at 5:45 p. m., or that she might leave the train at Putney; whereupon she voluntarily left. He further testifies that there are from 20 to 40 houses in Putney, including a lumber plant, and that appellee could have found lodging in a boarding house kept for lumber men.

1. Appellant insists that appellee voluntarily alighted from the train; that she could have secured lodging at Putney, but made no effort to do so, all without any tortious action upon the part of the conductor; and that therefore she can recover damages for breach of contract only, to wit, compensation for loss of time and expenses incurred in returning from Putney to Gatum. The argument is plausible, and a jury might reach that conclusion; but before so saying as a matter of law, all of the evidence must be considered. Admittedly there was no railway agent or depot at either station, nor accommodations of any kind at Gatum. Appellee saw but one house at Putney. She was an utter stranger. Certainly she would not want to be left at the former place at 8:30 p. m., and the latter one was little, if any, better. If under such circumstances the conductor, who had negligently carried her by the station, informed her that it was but a short distance to Gatum and only offered to take her to the end of the line and carry her back to her destination

after dark, and upon her leaving the train failed to offer any assistance, or to make any suggestions as to how she could return, it was a question of fact as to whether she voluntarily left the train and otherwise exercised ordinary care in walking back to her destination, and brings the case within the ruling laid down in the well-considered case of L. & N. R. & Lighting Co. v. Comley, 169 Ky. 11, 183 S. W. 207, in which we said:

> "When the contract of carriage was broken in such manner as to be tortious, as when no effort is made by the carrier to look after the safety or comfort of the passenger, and the situation is such that the passenger cannot find safe and comfortable accommodations by the exercise of reasonable care, and suffers injury in consequence thereof, the damage should be assessed under the tort rule, and the carrier must compensate him not only for lost time and expense incurred, but for such inconvenience, discomfort, injury or illness as follows directly from its acts. . . .
>
> "It is, however, the duty of the passenger, when delay or interruption in the course of the carriage contracted for occurs, or when he is required by the carrier to leave his car before the journey is completed, or when he is carried beyond his place of destination, to exercise such reasonable care as a person of ordinary prudence so situated would exercise to minimize the damages. And a passenger cannot recover for any suffering or loss due to his own want of ordinary care in this respect."

Nor do we think she is precluded by her answer to the hypothetical question as to what she might have done had there been hotel accommodations at Putney, though this answer could properly be considered by the jury. L. & N. R. Co. v. Pigg, 206 Ky. 470, 267 S. W. 549, is relied upon as laying down a different rule, but an inspection of that case will disclose an obviously different state of facts.

2. The issues upon appellee's right of recovery and the appellant's defenses thereto were set out in instructions 1 and 3 and substantially conformed to the ruling laid down in the Comley case. However, instruction No. 2 upon the measure of damage is erroneous, in that it permits the jury, if they award a recovery for the alleged tort, to award her compensation for any impairment of

her ability to earn money or perform her ordinary duties. and also for prospective damages of the same character. There is no evidence upon which to base this part of the instruction, and upon another trial it will be omitted.

3. Appellee was permitted to testify that in going over the mountain from the station to her brother's she was overtaken by a rainstorm, from which she contracted a cold and experienced great discomfort. This evidence was incompetent, as appellant was not responsible for what occurred to appellee after reaching her destination. This was later withdrawn from the jury by the trial court, but in view of the size of the verdict it may have been prejudicial. On another trial none of the incidents. occurring after she returned to Gatum will be introduced in evidence, nor the condition of her health either before or after the trip, as there is no evidence that her health was injured by the walk.

4. As to whether the verdict is excessive is not considered or determined.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.