# Louisville & N. R. Co. v. McPherson.

(Decided Feb. 5, 1935.)

ASHBY M. WARREN and LOW & BRYANT for appellant.

GOLDEN, LAY & GOLDEN and J. H. TAYLOR for appellee.

.OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Ethel McPherson resided, and had resided for ten or twelve years, at Arjay, in Bell county, Ky., a station of the Louisville & Nashville Railroad Company. Between 8 and 9 o'clock a. m., on the 12th day of February 1932, she went to the depot at Pineville for the purpose of boarding the car to Arjay. She claims that she entered the passenger coach without a ticket and paid the conductor 15 cents, the fare from Pineville to Arjay. The conductor's contention is that at the time she entered the car she had a ticket for Jensen, which she delivered to him. Jensen is on the right-hand fork, and Arjay is on the left hand fork, of the Louisville & Nashville Railroad Company's Straight Creek branch; the junction point between the two being Straight Creek. The route of the train on which Mrs. McPherson was riding is from Pineville to Straight Creek, thence to Blanche, where it backed to Heyburn, thence to Crockett, via Griggs, where the train returns from Crockett to Straight Creek, and thence to Kettle Island, the end of the right-hand fork of the Straight Creek branch, and therefrom to Pineville.

On the day involved, the train was made up of the engine, three gondolas, a car of stone, the caboose and coach, the coach on the rear, occupied by the passengers, including Mrs. McPherson. On its arrival at Arjay, the train stopped for about five minutes, during which time freight was unloaded. Mrs. McPherson and her son, who was at the station, claim that, while the train was at Arjay, the coach was some dstance from the point where the passengers were received and discharged, and the coach was opposite a deep cut. Charley Bailey, Henry Bailey, Virginia Onkst, and Hazel Smith were in the coach with Mrs. McPherson. They, the conductor, and the brakeman deposed that, while the train was at Arjay, the end of the coach in which Mrs. McPherson was riding was about 8 or 10 feet of the platform. It is admitted that the arrival of the train at Arjay was not announced by the conductor or any one else or the passengers otherwise informed of its arrival by those in charge of it.

Mrs. McPherson admitted that she knew it had arrived at Arjay, but claims that she expected, after it stopped, it would move forward to the regular stopping place for the departing and boarding of passengers, and she therefore remained in her seat. She was playing with the baby of, and talking with, Mrs. Hazel Smith, while the train remained at Arjay. After it left Arjay, she informed the conductor she wanted to get off at Arjay, when he stated to her that it had stopped long enough for her to get off, but that he would take her to Crockett and let her off at Arjay as the train came back. She replied that she had to get her husband's dinner and would not have time to go to Crockett and back, and would like for him to back the train and let her get off at Arjay, assigning as the further reason she never left the children at home by themselves in cold weather. She admitted the conductor stated to her, "You stay on the train and we will take you to the head of the road and bring you back," and she concluded from his statement "they would do that," until the train began to back, slow up and stop, and, after it did so, the conductor said to her, "Come on." It went to Blanche and had backed to Heyburn, at the time she stated the conductor said to her, "Come on."

Immediately after the conductor used these words, she arose from her seat and went to the platform, from which she was assisted by the flagman, Henry Lee, down

the steps onto the ground. The point at which she left the train was about 200 feet north of Heyburn station. There was a commissary and the residence of Mrs. Charles Dawes at Heyburn. At that time her husband was at work at Fox Ridge in the same vicinity. She was acquainted with the vicinity, the commissary, Mrs. Dawes, and knew where her husband worked. At the time she left the train, Lee claims that she informed him that she would go to the commissary; this she denies. No other words passed between her, Lee, the conductor, or any one connected with the train. The train went on to Crockett.

She brought this action, alleging that the acts of those in charge of the train were tortious, and thereby she had sustained $10,000 damages.

Mrs. McPherson, after getting her bearings, started walking toward home, which was about a mile away. In going to her home, she traveled the railroad track; snow and ice were on the ground; she slipped and fell, severely injuring her knee; she became numb and had great difficulty in getting up; she arose, limped, and dragged herself until she came to a point close to the station at Arjay, where she stopped to warm at her daughter's; then she walked to her home about a quarter of mile. She was wearing slippers and claims her feet got wet; she developed a deep cold, influenza, and bronchial trouble, and was confined to her bed for some three weeks; her feet were frozen, turned black, began to swell, and the skin peeled off. At that time she weighed 190 pounds, but she had lost weight to 160, and had been unable to do her customary work; still suffers from her leg, knee, and bronchial tubes. She made this trip in February. Dr. Wilson was called to see her March 11, 1932. He saw her only one time. She had bronchitis and an injured knee.

On a trial before a jury, a verdict was returned in her favor for $500. The railroad company appeals.

The decisive, sharp, sole issue presented is, Was the acts of those in charge of the train as disclosed by the evidence "tortious," as this term is used in such cases? It is earnestly and vigorously contended by Mrs. Mrs. McPherson that their acts partake of the nature of a tort, and were wrongful, and therefore the measure of damages is controlled by Louisville & N. R. & Lighting Co. v. Comley, 169 Ky. 11, 183 S. W. 207;

Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A. (N. S.) 588, 154 Am. St. Rep. 457, and Louisville & N. R. Co. v. Manness, 225 Ky. 625, 9 S. W. (2d) 1011.

The railroad company, with like earnestness, insists the facts bring the case within the measure of damages stated in Louisville & N. R. R. Co. v. Cooper, 164 Ky. 489, 175 S. W. 1034, L. R. A. 1915E, 33; Cincinnati, N. O. & T. P. Ry. Co. v. Rose (Ky.) 115 S. W. 830, 21 L R. A. (N. S.) 681; Sandifer's Adm'r v. L. & N. R. R. Co., 89 S. W. 528, 28 Ky. Law Rep. 464; Exchange Bank v. Trimble, 108 Ky. 230, 56 S. W. 156, 21 Ky. Law Rep. 1681; Henderson Trust Co. v. Stuart, 108 Ky. 167, 55 S. W. 1082, 21 Ky. Law Rep. 1664, 48 L. R. A. 49; Bush v. Grant, 61 S. W. 363, 22 Ky. Law Rep. 1766; City of Maysville v. Guilfoyle, 110 Ky. 670, 62 S. W. 493, 23 Ky. Law Rep. 43.

There is no confusion nor conflict of principles in the cases cited to us by Mrs. McPherson and those cited by the Louisville & Nashville Railroad Co. They differ only in their application to the developed facts in the particular case. The cases cited by both Mrs. McPherson and the railroad company recognize the rule that damages are recoverable by a passenger when a contract of carriage is broken in such a manner as to constitute a tort. And, when no effort is made by the carrier to look after the safety and comfort of the passenger, put off its train at a place other than his destination, and the situation is such that the passenger, after he leaves the carrier's conveyance, cannot find safe and comfortable accommodations by the exercise of reasonable care, then the contract of carriage is regarded as broken in such a manner as to constitute a tort; but, though it may be broken in such a manner as to constitute a tort, it is the duty of the passenger after it is so broken to exercise ordinary care to minimize his damages.

There is a factual distinction between the Comley and the other cases cited by Mrs. McPherson and this one. In the Comley Case the passenger was put off the train at the outskirts of the city, 3 miles from the station, in the middle of a cold winter night, when rain and snow were falling, and she was left to find her way as best she could to her destination. Mrs. McPherson was invited to remain on the train until it went to Crockett and returned, which would require about one

hour; but, at her insistence that she did not have time, because of the obligations of her home, to remain on the train one hour, the train was stopped, she was put off within 200 feet of a commissary, near the home of one of her neighbors, within a quarter of a mile of the place at which her husband's work engaged him and within one mile of her home, between 9 and 10 o'clock a. m. At the time this occurred, no unkind or unpleasant word was spoken to her; no indignity or lack of consideration or courtesy was manifested; she was kindly assisted when leaving the train. Plainly, the facts herein distinguish Mrs. Pherson's case from those of the passengers involved in the Comley and the other cases upon which she relies. Her recovery is controlled by the measure of damages stated in Louisville & N. R. R. Co. v. Wells, 219 Ky. 718, 294 S. W. 143.

Wherefore the judgment is reversed for proceedings consistent herewith.